■ Thomson Industries, Inc., Appellant, v. Incorporated Village of Port Washington North, Respondent.— Memorandum by the Court. Judgment of the Supreme Court, Nassau County, entered February 28, 1968, modified, on the law, by deleting the second decretal paragraph thereof and substituting therefor the following paragraph: " Ordered and adjudged that section 249 of the General Business Law prohibits the use of the plaintiff's property as a helicopter landing site, unless authorization is granted by the governing body of the defendant in accordance with section 249." As so modified, judgment affirmed, with costs to defendant. The findings of fact below are affirmed. Plaintiff, a manufacturer of bearings, brought this action for a judgment declaring (1) that the zoning ordinance enacted by defendant and section 249 of the General Business Law do not prohibit the operation of plaintiff's helicopter and the use of plaintiff's 15-acre parcel as a helicopter landing site and (2) that the absolute prohibition of the use of plaintiff's premises by a helicopter is unconstitutional and void. Special Term determined the issues after a trial in favor of defendant and granted judgment declaring that the zoning ordinance prohibits the use of plaintiff's premises as a helicopter landing site and is valid and constitutional; it dismissed the complaint so far as it sought a declaration with respect to the application of section 249 of the General Business Law upon plaintiff's proposed helicopter operations. We agree with Special Term's findings and conclusions as to the effect and validity of the zoning ordinance. Fairly construed, the ordinance prohibits the activities which plaintiff's operations

would necessarily entail. We think, also, that, as construed, the ordinance is constitutional. Where conditions warrant the exercise of the power, the establishment of a heliport or helicopter landing site may be restricted by a municipality. The restriction may constitute a prohibition of such activities when a danger or a nuisance would result if the activities were allowed to be carried on. Here the presence of storage tanks containing gasoline, the proximity of residences, and the loud noise engendered by helicopters were factors which defendant could reasonably take into account in enacting the ordinance prohibiting plaintiff's proposed use of its property located within the Industrial A District. If the ordinance were to be stricken as unconstitutional with respect to plaintiff's property, it would follow that the ordinance would have to be considered unconstitutional as to other property similarly situated; and a pattern of helicopter use within the village might well develop into an intolerable and perilous state. In short, the ordinance represents a fair and reasonable use of the police and zoning power by defendant under the circumstances presented by the record. In addition, it is our opinion that section 249 of the General Business Law applies to the use which plaintiff contemplates. That statute embodies the public policy of the State that "the uncontrolled establishment of an airport or landing field by private persons close to existing privately owned airports or to public airports * * * endangers the lives and property of persons operating aircraft on or near existing privately owned or public airports and of occupants of land in their vicinity" and that the establishment of an airport within the limits marked by the statute is a public nuisance and a hazard. The statute, in giving effect to the public policy of the State, provides that a private airport may not be established except by the authorization of the municipality in which it is to be located and that no such airport may be authorized unless the limits prescribed by the statute are observed; the limits may be waived by the State Commissioner of Transportation upon application of the municipality. The provisions of the statute require that the establishment of a helicopter landing field, privately owned, be authorized by the governing body of defendant (*Matter of Underhill* v. *Board of Appeals of Town of Oyster Bay,* 273 App. Div. 788, affd. 297 N. Y. 937; cf. *Town of Poestenkill* v. *Sicho,* 54 Misc 2d 191). The governing body of defendant has neither authorized the establishment of the helicopter landing site by plaintiff nor has it applied to the Commissioner of Transportation for a waiver of the limits stated in the statute (see, also, General Business Law, § 240, subds. 5, 11). Accordingly, the judgment must be modified by declaring that section 249 of the General Business Law applies to plaintiff's premises and prohibits the use of plaintiff's property for a helicopter landing site, unless authorization of the governing body of defendant is granted in accordance with the provisions of section 249. We should declare the rights of the parties under the circumstances of the case presented to the court (CPLR 3017; cf. *Lanza* v. *Wagner,* 11 N Y 2d 317, 334; *Skyway Container Corp.* v. *Castagna,* 27 A D 2d 542).

BENJAMIN, J. (dissenting). This action for a declaratory judgment is far-reaching in its economic and sociological impact. It raises the question of whether local communities, however proud and insular they may desire to be, can impede the expanding use of corporate aviation by unduly restricting the landing of helicopters within their boundaries.

The Village of Port Washington North is a small one. Its northern half is predominantly zoned for residential use. Most of the southern half is zoned Economic Development, but contains several small Business and Residence districts. Virtually separating the two halves is a 40-acre Industrial district.

The plaintiff operates two plants — one out-of-State and the second in the Industrial Zone property. Two acres of the property are occupied by the plant

parcel in the district, is irregular in shape and is bounded on the south by a sand mine zoned Economic Development, on the southwest by a hill zoned Residence " C ", on the west by the village line and on the north and east by Industrial Zone property. Two acres of the property is occupied by the plant building which has been in operation since 1963. Two additional acres are black-topped and are used as a parking area. In the rear of the building and northeast of the parking area is a paved circular truck turn-around.

The plaintiff purchased one helicopter to make emergency deliveries of small parts, to transport rapidly key personnel, distributors, licensees and customers and to enhance its sales prestige. At first the parking area was used for the helicopter landings; later the truck turn-around was established as the permanent site for the estimated 10 landings and take-offs a month. The designated area contains no facilities for the helicopter other than minimal fuel storage. The aircraft is not to be stored or serviced on the subject property.

In early 1965 the Federal Aviation Agency indicated approval of the proposed landing site "from an airspace standpoint" on condition that operations would be conducted solely in accordance with visual flight rules and "ingress and egress routes are established, if necessary, to prevent confliction with Sands Point Seaplane Base." These conditions have been met.

Two approach patterns to the landing site have been established. Both originate over Manhasset Bay. Pattern number one runs northwest parallel to but outside the village line, then turns northeast, entering the village at the point where the plaintiff's property is coextensive with the village line, and crosses the plaintiff's building to the landing site. Pattern number two runs northeast (crossing the village line from Manhasset Bay) along the length of a large pond which makes up the southernmost portion of the village, turns northwest, crosses the sand mine and proceeds straight to the landing site.

The village directed the plaintiff to cease all helicopter operations, contending the use violated both the local zoning ordinance and section 249 of the General Business Law. Special Term sustained the village's determination; and the majority is affirming Special Term's decision.

Article VIII-A of the zoning ordinance prohibits the erection, alteration or use of a building or a lot or premises for the purposes of an "airfield" or a "heliport" in the Industrial A district. Neither "airfield" nor "heliport" is defined in the ordinance. Nor does the evidence clearly define those terms. In view of that ambiguity, the ordinance must be construed strictly against the village and in favor of the property owner, since it is in derogation of common-law rights (*Matter of 440 E. 102nd St. Corp.* v. *Murdock*, 285 N. Y. 299, 304; *Matter of Glenel Realty Corp.* v. *Worthington*, 4 A D 2d 702). Therefore, without attempting to set forth a judicial definition of the word "heliport", it must be concluded that, whatever was intended to be prohibited by the ordinance, the prohibition did not encompass the plaintiff's proposed use.

Assuming, *arguendo*, that the proposed use is prohibited by the ordinance, in my opinion the ordinance as applied to the subject property is unconstitutional.

While it is within the scope of the zoning power to regulate the use of land as sites for the take-off and landing of aircraft (see 3 Rathkopf, Law of Zoning and Planning, p. 427; *Ridgewood Air Club* v. *Board of Adjustment of Vil. of Ridgewood*, 136 N.J.L. 222), such regulation (or in this case actual exclusion) is invalid if it lacks a rational basis (see, e.g., *Yorkavitz* v. *Board of Township Trustees of Columbia Township*, 166 Ohio St. 349; *People* v. *Martins of Hempstead*, 55 Misc 2d 802, and cases cited therein). And on this record I believe the prohibition of helicopter operations, as applied to the plaintiff's property, is arbitrary and unreasonable, bears no reasonable relationship to the health,

safety and general welfare of the community, and therefore lacks a rational basis.

We need not here concern ourselves with indiscriminate flights over the village. In my opinion, whether or not the Federal Government has pre-empted the area of air flights and procedures (cf. *Allegheny Airlines Inc.* v. *Village of Cedarhurst,* 238 F. 2d 812, with *Loma Portal Civic Club* v. *American Airlines,* 61 Cal. 2d 582; see, also, *American Airlines* v. *Town of Hempstead,* 398 F. 2d 369), any attempt by a local government to impose higher minimum altitudes or to ban flights within the navigable airspace or, it follows, to bar flights made above the prescribed minimum altitudes from any portion of the airspace above it would have to be struck down as contrary to Federal law (U. S. Code, tit. 49, §§ 1304, 1301, subd. [24]; Code of Fed. Reg., tit. 14, § 91.79; cf. *United States* v. *Causby,* 328 U. S. 256; *Griggs* v. *Allegheny County,* 369 U. S. 84; *Matter of Presnell* v. *Leslie,* 3 N Y 2d 384, 392). Further, such attempts would be invalid under New York law. The village derives its power to act from the State. Although the village is given the special power to regulate "aeroplanes" (Village Law, § 89, subd. 44), generally, a grant of the power to regulate is not a grant of power to prohibit (see *People* v. *Martins of Hempstead,* 55 Misc 2d 802, *supra*). Moreover, in section 245 of the General Business Law, the State has said that helicopters may fly over both congested and noncongested areas, provided the conditions with respect to the statutory minimum altitudes therein prescribed are complied with; and it would be beyond the power of a village to nullify that law by prohibiting helicopter flights from any portion of this airspace above the minimum altitude fixed by the statute.

In addition, "The zoning power * * * must operate in relation to the use of land and not for the accomplishment of purposes extraneous to that relation. If safety factors or health reasons require zoning controls, they must involve safety and health characteristics which relate to the land under the regulation" (*De Sena* v. *Gulde,* 24 A D 2d 165, 171). So, because the village may not prohibit helicopter flights from any portion of the airspace above the minimum altitude levels, it may not use the zoning power to that end. Yet it is clear that regulating the use of land for aviation landing purposes is a legitimate exercise of the zoning power. The conflict, then, would result not in removing the zoning power in this area but in limiting it to a consideration of the effect which the landing of helicopters on the plaintiff's property would have on the health, safety and welfare of the community.

Secondly, indiscriminate flights need not concern us, because in this case two approach and departure paths have been laid out. These paths present no reasonable apprehension of danger to that portion of the community they pass over and I see nothing in the evidence that would justify prohibiting the prospective use. The size of the village or the fact that the industrial district lies in the center of the village is not determinative. The landing area lies sufficiently far from most of the residences of the village to constitute no danger to them. A substantial portion of the village is barren. In neither of the approach paths would the helicopter fly over the principal residential areas. The nearest residences (and they are few) are 700 feet from the landing site; a nursery school is 900 feet away; fuel storage tanks are more than 1,000 feet away; and all of them are protected by a hill some 700 feet from the landing site. In view of the exceptional properties of helicopters, these distances are safe.

In contrast to the lack of evidence of danger, there is the testimony of the plaintiff's experts that the proposed use would be a safe operation. One, whose credentials were impressive, went so far as to say it is one of the safest he had seen in some time. All testified to the lack of flight hazards that could result

in danger to the community. Viewing the approach paths, it is difficult to conceive of more favorable paths, except in a completely desolate area. To accept the village argument of danger along these approach paths would relegate helicopter landing sites to areas in which the approach paths could pass only over water or barren land; and the effect would be a nullification of the court's power to review zoning restrictions on helicopter landing sites, since it would be most difficult, if not impossible, to find a more favorable path and site than those at bar.

The village presented a three-pronged defense. The first has been adopted by my colleagues in arguing that to hold the ordinance unconstitutional as applied would open the door to like holdings for other properties and could lead to intolerable and perilous conditions. If the ordinance is arbitrary and unreasonable in its application to the plaintiff's property, that would be sufficient to hold it unconstitutional; the application of the ordinance to other property is irrelevant and should not influence our determination, since every case must be determined on its own facts. Further, the majority overlooks section 249 of the General Business Law, which gives the village governing body or the Commissioner of Transportation the power to prevent private airports within a prescribed radius of already established airports.

The second prong of the case for the defense was an attack on helicopter safety based primarily on certain statistics on rotorcraft operation. In my opinion, these statistics are confusing, incomplete and inconclusive. And even if they were deemed, *arguendo,* to show that rotorcraft are less safe than small fixed-wing craft, the significant question is not that, but whether rotorcraft are themselves unsafe or hazardous. The statistics cannot be so evaluated, since they can easily be read as saying that rotorcraft are safe but small fixed-wing craft are safer. These generalizations, too, must be refined, in using accident statistics, to reflect the type of operation, the damage to property or persons on the ground, the cause of the accident, the type of the accident and the location of the accident. There is no evidence in the record to determine any of the above as to fixed-wing craft. Moreover, as I read these statistics, they tend to substantiate, rather than negate, the testimony of the plaintiff's experts as to the safety of helicopters in general and of the plaintiff's operation in particular.

Finally, the defense attempted to show that the proposed use would generate loud and irritating noise. I believe the noise factor of little consequence. Again the layout of the approach paths and the inability to prohibit overflights must be emphasized. The estimated use is 10 flights a month, apparently all during the day. The duration of each use, as far as the generation of noise is concerned, is minimal; and the noise generated in the relation of its source to residential districts would not be unusual in contemporary life. When on the landing pad, the string of plants along East Soundview Drive insulates the residential zones to the north. To the south is the hill; and the few homes in the residential district are on the hill. A substantial portion of the village is involved in sand mining operations. I would be loathe, in this day and age, to prevent a sporadic helicopter use in an Industrial district incidental to a manufacturing plant, on the meager evidence presented of inconvenience caused by the noise emanating from the plaintiff's operation.

In determining the issue of the reasonableness of the prohibition of the proposed use on the facts herein, we should not overlook helicopter use around us. It is a common occurrence for helicopters to land on and take off from the White House lawn. Surely, the safety of the occupants of the White House has been carefully considered in making the determination to so use helicopters. In major cities regularly scheduled commercial helicopter services operate from

atop mid-town buildings. There can be no comparison between these operations and the one herein in terms of any threat to people and property. Central Park, in mid-Manhattan, too, is occasionally used for landings and take-offs. As a last illustration, we can look to the recent visit of President Nixon to the Vatican. A helicopter flew the President to and from his meeting with the Pope, landing in St. Peter's Square, before St. Peter's Basilica. It is safe to assume that, if any reasonable danger to the structures near the Square existed, the helicopter would not have been so used.

Turning to a consideration of section 249 of the General Business Law, I agree that the statute applies to the use plaintiff contemplates, but I am of the opinion that as read by my colleagues the statute is constitutionally defective. As I read subdivision 2 of that section, in context, and in the light of the rule that statutes in derogation of common-law rights must be strictly construed, it empowers the village's governing board to consider only the statutory spacing requirement between airports (contained in § 249) when determining a request by a landowner for authorization to establish a private airport (see *Town of Poestenkill* v. *Sicho,* 54 Misc 2d 191). That is not to say that the locality has no other power over the establishment of private airports (zoning power, for example) ; rather, that its power under section 249 is limited to the consideration of spacing.

Section 249 provides, *inter alia,* that the location of a private airport within a specified distance from an existing airport is a nuisance. But it specifically empowers the local governing board to apply to the State Commissioner of Transportation for a waiver of that distance requirement if the special facts of the case indicate that a nuisance or hazard does not exist. (In the case at bar, it seems clear that there is no hazard or nuisance.) If the statute be read narrowly, as the majority reads it, it would give the local governing board absolute power to bar an airport on the basis of the spacing requirement (even though in fact there is no nuisance or hazard), since literally read it authorizes only the local governing board to apply to the State Commissioner for a waiver, and does not expressly authorize the property owner to make such application if the local governing board refuses to do so. Such delegation of illimitable power to a local governing board, and the denial of all relief from its arbitrary exercise of such power, would seem to me to be violative of due process, particularly in a case like that at bar, where the record clearly establishes that the proximity of the plaintiff's landing site to an existing seaplane base constitutes neither a hazard nor a nuisance. However, since the policy of the courts of this State is " to construe statutes in such a manner as to uphold their constitutionality" (*People* v. *Bailey,* 21 N Y 2d 588, 596), we must read into the statute that which would preserve its constitutionality, so long as such an interpolation would not be inconsistent with the language or the statutory scheme and is clearly warranted (*People* v. *Bailey, supra*; see, also, *Matter of Buttonow,* 23 N Y 2d 385). This could easily be done consistent with the legitimate ends of the statute by construing it to permit a property owner, who does not satisfy a spacing requirement and has therefore been denied authorization by the local governing board, to seek a waiver directly from the Commissioner of Transportation; and a negative determination by him would then be reviewable in a proceeding pursuant to article 78 of the CPLR initiated by the applicant. The legitimate legislative purpose would not be thwarted and control over any waiver of spacing would remain in the State agency, while the rights of property owners would be preserved. For this plaintiff, then, such a determination would not allow immediate resumption of helicopter operations. The plaintiff would first have to obtain a waiver of the spacing requirement from the Commissioner of Transportation; and, until such time as a waiver is obtained, the plaintiff could not use the property as a helicopter landing and take-off site.

In conclusion, in my opinion, the zoning ordinance may not be construed to prohibit the proposed use. Assuming, *arguendo,* the proposed use is prohibited by the ordinance, the ordinance as applied to the subject property is unreasonable and arbitrary. Finally, section 249 of the General Business Law, to preserve its constitutionality, must be construed to permit the plaintiff to apply to the Commissioner of Transportation for a waiver of the spacing requirement, but that, pending such waiver, the plaintiff may not use the property to land and take off its helicopter. The judgment should be reversed and a declaration consistent with the above made.

Brennan, Acting P. J., Rabin, Hopkins and Martuscello, JJ., concur in memorandum by the court; Benjamin, J., dissents and votes to reverse the judgment and to declare: (a) that the zoning ordinance does not prohibit the proposed use; (b) that, if the ordinance be construed to prohibit the proposed use, it is unreasonable, arbitrary and unconstitutional as applied; and (c) that subdivision 3 of section 249 of the General Business Law, properly construed, permits plaintiff to apply to the Commissioner of Transportation for a waiver of the spacing requirement, but that pending such waiver plaintiff may not use its property to land and takeoff its helicopter, with an opinion.

Judgment modified, etc. [55 Misc 2d 625.]