Lucille **STEELE**, Plaintiff-Appellant,

v.

Elliot **RICHARDSON**, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 25, Docket 72–1304.

United States Court of Appeals, Second Circuit.

Submitted Oct. 3, 1972.

Decided Dec. 22, 1972.

Whitney North Seymour, Jr., U. S. Atty., for the S. D. N. Y.; Stanley H. Wallenstein and Joseph P. Marro, Asst. U. S. Attys., for defendant-appellee.

Before MOORE, FEINBERG and MULLIGAN, Circuit Judges.

FEINBERG, Circuit Judge:

Lucille Steele appeals from an order of the United States District Court for the Southern District of New York, Edmund L. Palmieri, J., which granted summary judgment to the Secretary of Health, Education and Welfare, and denied appellant Social Security benefits as a widowed mother. The basic issue before the Secretary was whether appellant was the "widow" of Howard Steele, the insured wage earner, when he died. The Secretary decided that she was not, and the district court upheld that finding.[1] We disagree, and we reverse the judgment.

Howard Steele died on December 25, 1966. Thereafter, appellant applied for insurance benefits allegedly owing, on the account of the deceased Steele, to her as a widowed mother pursuant to 42 U.S.C. § 402(g)[2] and to her children by Howard Steele pursuant to 42 U.S.C. § 402(d). Both claims were initially denied, but, on reconsideration, the children were found entitled to benefits. Appellant petitioned for and received an evidentiary hearing on her own claim; the decision of the hearing examiner, which once more denied the application, became final when affirmed by the Appeals Council. A petition for review in the district court followed.[3]

The hearing examiner rejected appellant's claim because he found that notwithstanding evidence that a marriage

Kalman Finkel, The Legal Aid Society, Carol Berkman, New York City, for plaintiff-appellant.

1. Both parties moved for summary judgment in the district court; the Secretary's motion was granted.

2. 42 U.S.C. § 402(g)(1) provides in part: The widow . . . of an individual who died a fully or currently insured individual . . . [who] has filed application for mother's insurance benefits . . . [if] at the time of filing . . . [she] has in her care a child of such individual entitled to a child's insurance benefit . . . shall . . . be entitled to a mother's insurance benefit.
"Widow" is defined by 42 U.S.C. § 416(c) as "the surviving wife of an individual."

3. 42 U.S.C. § 405(g).

had been celebrated in Maryland on September 28, 1954 joining appellant and Howard Steele, neither appellant nor Howard Steele was free to marry the other. It is undisputed that appellant had married James Artis of New York City in May 1950, and that this marriage had never been terminated by death or legal decree. The examiner also found evidence of a prior marriage entered into by Howard Steele and one Alice Page. Finding that appellant's marriage to Steele was therefore invalid, the hearing examiner concluded that she had not established that she was a widow as defined by 42 U.S.C. § 416(c). See note 2 supra. Judge Palmieri upheld this decision without reaching the effect of appellant's prior marriage to Artis, reasoning that "even if she were free to marry Steele . . . Steele was not free to marry her . . . since Alice Page was still alive at the time Steele married plaintiff and the Steele-Page marriage had never been dissolved."

Appellant has the burden of establishing the validity of her marriage to Steele. E. g., Smith v. Finch, 426 F. 2d 814 n. 1 (4th Cir.) (per curiam), cert. denied, 400 U.S. 907, 91 S.Ct. 150, 27 L.Ed.2d 146 (1970). On this appeal, appellant argues that New York law, which controls here,[4] recognizes a presumption in favor of the validity of the latest of successive ceremonial marriages. See, e. g., In re Terry's Estate, 32 Misc.2d 470, 222 N.Y.S.2d 865, 866 (Surr.N.Y.Co.1961); In re Meehan's Estate, 150 App.Div. 681, 135 N.Y.S. 723 (1st Dep't 1912). Accordingly, appellant further argues, were her marriage to Steele tested in the courts of New York, this presumption would operate to validate that marriage and thus establish her statutory claim to benefits. We agree.

In Dolan v. Celebrezze, 381 F.2d 231 (2d Cir. 1967), Judge Friendly canvassed the many New York cases that consider the presumption and concluded that its force varies with "[a]ttendant facts and circumstances . . . in given cases . . . ." Id. at 236, quoting In re Carr's Estate, 134 N.Y.S. ed 513 (Surr.Chautauqua Co. 1953), aff'd, 134 N.Y.S.2d 280 (4th Dep't 1954). The crucial question regarding any evidentiary presumption is what proof is required to rebut it. See H. Clark, Law of Domestic Relations § 2.7, at 68–69 (1968). The Secretary principally relies on two items of evidence to rebut the presumed validity of the Steele-appellant marriage: an "Application for Social Security Account Number" filed by Howard Steele in 1940 listing Alice Page as his wife; and a 1950 marriage license issued to James Artis and Lucille Hickmon (appellant). If substantial evidence established that either or both of these two prior marriages were initially valid and remained undissolved when appellant married the wage earner Steele, then their marriage is void under New York law, N.Y. Domestic Relations Law § 6 (McKinney's Consol.Laws, c. 14, 1964), and the presumption of the validity of appellant's marriage to Steele is successfully rebutted.

Whether the presumption should be strong or limited in this case, the Secretary's evidence of the prior Howard Steele-Alice Page marriage is not adequate to rebut the presumption and to show that Steele was legally disabled from marrying appellant. The evidence that Steele had in fact been married to Alice Page was hardly overwhelming.

---

4. 42 U.S.C. § 416(h)(1)(A) provides in part:

An applicant is the wife, husband, widow or widower . . . for purposes of this subchapter if the courts of the State in which such insured . . . was domiciled at the time of death . . . would find that such applicant and such insured individual were validly married . . . at the time he died.

Although Steele died in Pennsylvania, the parties agree that he was domiciled in New York at the time of his death.

The listing of her as "wife" in an application for a Social Security number did not necessarily show that the union was ceremonially blessed. Moreover, the reliability of the 1940 document is largely undermined by a later "Employee's Request for Change in Records," filed in 1947. In this paper, Steele requested significant changes in his social security records: In the 1940 document, he had listed his father as "Elijah Steele" and his mother as "Jennie Williams"; in the 1947 correction, these were changed to "Walter Edwards" and "Minerva Steele," respectively. These changes cast considerable doubt on the accuracy of any identification of relatives made by Steele previously, such as Alice Page as "wife." Moreover, while the district judge found that Alice Page was alive when Steele married appellant in 1954, and that neither she nor Steele had divorced the other, we have searched the administrative record in vain for any affirmative evidence on these questions.

Evidence of a prior ceremonial marriage between appellant and James Artis does throw somewhat more doubt on the validity of appellant's later marriage to Steele. The record contains a marriage license signed by the City Clerk of the City of New York, which evidences their marriage on May 28, 1950. Both appellant in her testimony and Artis in a signed statement admitted this marriage; no divorce proceedings were ever instituted by either party; and Artis was living when appellant married Howard Steele. Whatever might be the strength of this evidence standing alone, however, appellant forcefully argues that her prior marriage to Artis was itself void for bigamy. Appellant testified that she had left Artis in October 1950, some five months after they were married, upon discovering that Artis had one and possibly several living wives. She further submitted a statement signed by Artis in which he acknowledged that he had married one Cherry Murphy in 1923, whom he had never divorced and from whom he had never received notice of divorce proceedings instituted or completed. We find this statement, in which Artis confesses against his penal interest to bigamy, particularly probative: Artis manifests a pattern of marriage without prior divorce as well as a familiarity with divorce proceedings when occasionally inclined to employ them.

■■ To be sure, the possibility remains that the Artis-Cherry Murphy marriage was terminated by the death of Cherry Murphy between 1923 and 1950, or by divorce without notice to Artis. We are nevertheless unwilling to place upon appellant the burden of eliminating these possibilities. Given the comparatively great investigative resources of the Secretary and the apparently restricted means of appellant, it seems more appropriate to require the agency to undertake the substantial record searches necessary to negative the continued validity of the Murphy-Artis marriage [5] and to establish the consequent bona fides of appellant's later marriage to Artis. We are reinforced in this view by two distinct lines of New York authority. The first holds that a party seeking to rebut the presumption of validity attached to a later ceremonial marriage must himself establish that the prior marriage was "valid," including whether the parties were "competent" to enter into it. See, e. g., In re Meehan's Estate, supra; In re Dugro's Will, 261 App.Div. 236, 25 N.Y. S.2d 88 (1st Dep't), aff'd mem., 287 N.

---

5. Even within her limited means, appellant did endeavor through her "church network" to establish that Cherry Murphy and James Artis never divorced and that the former had not died. She wrote a letter to the brother of James Artis in North Carolina, requesting this information in addition to the whereabouts of James. An apparent response to this letter, over the signature of Mrs. D. [illegible initial] Artis, stated that as far as the writer knew, the woman to whom James had been first married was still alive. Furthermore, although this response did not give the address of James, he was ultimately located.

Y. 595, 38 N.E.2d 706 (1944). See generally McCarter v. McCarter, 27 Misc.2d 610, 208 N.Y.S.2d 876, 880 (Sup.Ct. Kings Co.1960), quoting M. Grossman, New York Law of Domestic Relations § 70, at 44–45 (1947).[6] It follows that in this case the Secretary must prove that appellant and Artis were competent to marry. The second suggests that the presumption favoring a later marriage assumes greater force where, as here, the later marriage is attacked, not by a putative first wife or children of the first marriage, but instead by a party, like the Secretary, who is altogether a stranger to any domestic relationship in question. See, e. g., Esmond v. Thomas Lyons Bar & Grill, 26 A.D.2d 884, 274 N.Y.S.2d 225 (3d Dep't 1966).

■ Finally, we recognize that courts have on occasion found the presumption rebutted on proof arguably comparable to the Secretary's; but they have in general only done so when competing equities tip in favor of a claimant or claimants under the prior marriage. E. g., Dolan v. Celebrezze, *supra*. Here, we believe that on balance the equities work against the Secretary. Appellant married Howard Steele in good faith and bore him three children. Although she separated from him after only one year of marriage, there is force in her assertion that because she assumed responsibility for the children of the union, she was unable to achieve economic independence after separation. We see little virtue in straining to hold the presumption of a valid later ceremonial marriage rebutted in order to deny a surviving spouse her claim to financial support after some period of cohabitation, cf. Esmond v. Thomas Lyons Bar & Grill, *supra*, especially when the claim is made under the Social Security Act, which should not be construed in a niggardly

fashion to deny coverage. See Herbst v. Finch, 473 F.2d 771 (2d Cir. 1972).

Summary judgment in favor of the Secretary is reversed, with instructions to enter judgment in favor of appellant.

6. But see Rappel v. Rappel, 39 Misc.2d 222, 240 N.Y.S.2d 692 (Sup.Ct.N.Y.Co. 1963), aff'd mem., 20 A.D.2d 850, 247 N.Y.S.2d 995 (1st Dep't 1964) (plaintiff wife successful in setting aside later marriage, but denied damages for fraudulent inducement of marriage; appeal on latter point only).