■ In the Matter of the Estate of OLESKA BIHANSKYJ, Also Known as ALEX BIHANSKYJ, Deceased.—Decree unanimously affirmed, without costs, Simons, J., not participating. Memorandum: In 1941 the decedent, Alex Bihanskyj, then a resident of the Ukraine, married his first wife, Anastasia. In 1943 they had a daughter, named Evgenia. During the early 1950's the decedent moved to the United States. Anastasia, his first wife, and Evgenia remained in the Soviet Union. In 1960 decedent married his second wife, Helen, in Irondequoit. There was no issue of the second marriage. The

decedent died in 1970 and his will was probated in the Monroe County Surrogate's Court. Under its terms all decedent's property was left to his daughter, Evgenia. Both wives claim a right of election under his will. After conducting a hearing on December 19, 1974 the Surrogate concluded that the right of election belongs to Helen, the second wife. The first wife, Anastasia, appeals. We agree with the Surrogate's determination. It is well established under the law of this State that a presumption exists, absent contrary evidence, that a second marriage is valid, and the burden of proving its invalidity is placed upon those who assert it (EPTL 5-1.2; *Matter of Maiden,* 284 NY 429; *Matter of Dugro,* 261 App Div, 236, 239, affd 287 NY 595; *Matter of Hadley,* 57 Misc 2d 652, affd 32 AD2d 1078; *Matter of Callahan,* 142 Misc 28, affd 236 App Div 814, affd 262 NY 524). Once the presumption of validity which attaches to a second marriage has been overcome by sufficient evidence in the record, the burden of proving that the decedent was competent to enter into a second marriage then shifts to the second wife. Before that occurs, however, the first wife must have produced sufficient evidence to overcome the presumption of the validity of the second marriage *(Matter of Hadley,* 57 Misc 2d 652; *Matter of Terry,* 32 Misc 2d 470). In this case the proof produced by the first wife to overcome the presumption consisted of the decedent's birth certificate showing his birth in the Ukraine on March 19, 1912; the certificate of marriage to his first wife, Anastasia, also in the Ukraine on November 15, 1941; the birth certificate of their daughter, Evgenia, showing her date of birth to be May 6, 1943 and a letter from the daughter to a law firm in New York City (translated on November 22, 1971) in which Evgenia states that she lives with the first wife, her mother, and that the marriage between her father and mother was never dissolved and that she wants the law firm to obtain her mother's inheritance as well as her own. Received as an exhibit at the trial was the application for a marriage certificate made by the decedent to his second wife, Helen, on September 11, 1960. Upon the application it asks "number of marriage" after which the word "first" is typed in. The only evidence offered by appellant as proof that the first marriage was never dissolved is the letter from her daughter to a lawyer in New York City. That evidence is hearsay. Absent her own testimony (see, e.g., *Matter of Carr,* 134 NYS2d 513, affd 284 App Div 930; *Matter of Lancaster,* 30 Misc 2d 7, 9), there should be some affirmative affidavit or other proof that the first marriage was valid and not terminated prior to the second marriage, "even though this might require proof of a negative" *(Apelbaum v Apelbaum,* 7 AD2d 911). Indeed, the action of her husband leaving the Ukraine without her and immigrating to the United States in the early 1950's is inconsistent with the continuation of the marriage bond between the decedent and his first wife. Even though such conduct may 'not warrant a presumption of divorce obtained by her on the grounds of his abandonment, it is, nonetheless, sufficient to destroy the presumption that the marriage continues to exist merely because of evidence that it once was entered into. In this connection we note in passing that the letter from the daughter and the power of attorney which the first wife filed were dated in 1971, the year after the decedent died. Appellant's attorney stated on the record that obtaining correspondence from the Ukraine took a matter of weeks. Nevertheless, from November, 1971 when the original power of attorney was dated until December, 1974 when the hearing was held before the Surrogate in Monroe County no affirmative proof was obtained with respect to the first marriage not being dissolved. Further, with respect to the decedent's use of the word "first" on his second marriage certificate, we believe that such an answer is

susceptible of several different meanings. He could, as appellant contends, have meant to misrepresent his marriage status, lending credence to the first wife's claim that they were never divorced; but, he could also have meant that this was his first marriage in the United States. We conclude, therefore, that the quantum of proof needed to establish the invalidity of the second marriage is not sufficiently "strong and satisfactory" *(Whittley v Whittley,* 60 Misc 201, 203) to destroy the presumption of its validity and that the second wife is entitled to the right of election under decedent's will and not his first wife. (Appeal from decree of Monroe County Surrogate's Court—judicial settlement of executor's account.) Present—Moule, J. P., Cardamone, Simons, Dillon and Witmer, JJ.