**Juanita BOYD, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

No. 83 Civ. 1638.

United States District Court, E.D. New York.

May 25, 1984.

Robert F. Danzi, Pester, Goldberg & Schiff, Carle Place, N.Y., for plaintiff.

Asst. U.S. Atty. Thomas McFarland, E.D. N.Y., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff appeals from the termination of her Widow's Insurance Benefits, as provided for under 42 U.S.C. § 402 of the Social Security Act. For the reasons set forth herein, the decision of the Secretary is affirmed.

*Background*

On November 1, 1977, plaintiff Juanita Boyd applied for Widow's Insurance Benefits. Having established that she had married the late Edward Boyd on October 31, 1951 in Baltimore, Maryland, and that Edward Boyd died in New York in 1968, plaintiff was awarded benefits effective with the month of December 1977.[1]

On January 9, 1978, Jeanette T. Monroe filed an application for Widow's Insurance Benefits by virtue of her marriage to Edward Boyd on May 17, 1934 in New York. Mrs. Monroe testified at an administrative hearing that she lived with Edward Boyd in Philadelphia for an indeterminate period of time, that her marriage was thereafter repeatedly interrupted both by spousal disagreements and by Mr. Boyd's incarceration in prison for a number of years, and that the couple finally separated for the last time in 1963, with Mr. Boyd moving to New York. Tr. at 48–52, 128–34. According to Mrs. Monroe, she and Mr. Boyd remained good friends even after their final separation, and that Mr. Boyd's family continued to regard her as Mr. Boyd's wife. Tr. at 128–34.

Mrs. Jeanette Jackson, the daughter of Edward Boyd and Jeanette Monroe, stated that after her parents separated, she met her father from time to time in New York

---

1. As indicated by the decision of the ALJ, some confusion had surfaced over Mrs. Boyd's entitlement to Widow's benefits because of her prior marriage to one Claude Campbell. *See* Tr. at

10. Because the Secretary was satisfied that this marriage ended with a valid divorce, and since this issue has not been raised on appeal, I have not addressed it in the text of my opinion.

and that Mr. Boyd never lived in Maryland. Tr. at 73–81, 136–37. Furthermore, she stated that prior to Mr. Boyd's death, she was not aware of his having remarried. Tr. at 138. Like her mother, Mrs. Jackson stated that to her knowledge the first marriage was never annulled. Tr. at 138. A subsequent search of the court records of New York and New Jersey revealed no divorce decree. Tr. at 173. No search was made of the county or state records other than court records in New York or New Jersey, however, nor was any search conducted in other states where Edward Boyd may have been domiciled.

Juanita Boyd stated that she lived with Edward Boyd in New York for about sixteen months before separating for a year, then lived with him for less than a year before separating permanently. She claims to have no knowledge of Edward Boyd's prior marriage, let alone that he had any children. There were no children from the second marriage with Juanita Boyd. Tr. at 54–58.

Based on this record, the Administrative Law Judge (ALJ) determined that Juanita Boyd was not entitled to the benefits she was receiving and that these benefits should be awarded to Jeanette Monroe instead.[2] In reaching this result, the ALJ recognized that under New York law, there is a presumption in favor of the validity of the second marriage, citing *Steele v. Richardson*, 472 F.2d 49 (2d Cir.1972), but he argued that application of this presumption depended on the equities of the case. In this particular case, the ALJ found "no equities which would move a fact finder to conclude that there was any element of stability in the second of the two successive marriages." Tr. at 13.

**2.** With respect to sums already paid to Juanita Boyd during the period from December 1977 to January 1979, the ALJ determined that "such payments were originated without fault of the claimant and that recovery or adjustment of the overpaid amount would defeat the purpose of the Law." Tr. at 14. Therefore, recovery or adjustment of the overpaid amount was "waived." *Id.*

*Discussion*

The Social Security system provides secondary benefits to the surviving spouses of deceased workers. An applicant can qualify for benefits "if the courts of the State in which [the] insured individual ... was domiciled at the time of death ... would find that such applicant and such insured individual were validly married ... at the time he died." 42 U.S.C. § 416(h). Since Edward Boyd was domiciled in New York at the time of his death, it is to the laws of that State that this Court must look in order to determine whether the Secretary's decision should be affirmed insofar as she awarded benefits to Jeanette Monroe, and not Juanita Boyd.

The Second Circuit most recently addressed the issue of the validity of marriages under New York law for purposes of widow's benefits in *Steele v. Richardson, supra.* The Court reversed a decision by the hearing examiner, which had found a marriage to be invalid when both the deceased husband and the second wife, who was seeking widow's benefits, had allegedly been married before. Although there was some evidence, relied on by the hearing examiner, to suggest the validity of the first marriage—and consequently the invalidity of the second marriage—there was also countervailing evidence to suggest that the claimant widow's first marriage was bigamous and that the decedent's first marriage was never formally entered into. *Id.* at 51–52. The court resolved these ambiguities in favor of the second wife, since the Secretary was more capable of investigating the validity of the prior marriages but did not. *Id.* Two lines of New York authority were cited in support of this holding: first, that the party seeking to rebut the presumption in favor of the validity of the second marriage must prove the

When this action was appealed to this Court, Jeanette Monroe was provided an opportunity to be heard, since any finding as to plaintiff's appeal would affect her interests as well. Mrs. Monroe chose to rely on the defense of the Secretary, however.

validity of the first marriage; and second, that the presumption is stronger where the second marriage is attacked by an outside party, namely HHS, than when it is attacked by the first wife or her children. *Id.* at 53.

In reaching the result in *Steele,* the Court distinguished its prior holding in *Dolan v. Celebreeze,* 381 F.2d 231 (2d Cir. 1967), in which it found the presumption in favor of the validity of the second marriage to be weaker, based on a rather thorough survey of New York case law on the subject. *Id.* at 234–236. In *Dolan,* plaintiff and her son testified that there had never been a dissolution of plaintiff's first marriage to the deceased, even though she later married another individual and collected widow's benefits following the second husband's death. *Id.* at 233. Their testimony was considered bolstered by the fact that the first husband had made false statements that he was single or unmarried, which suggested to the Court that he was never divorced. *Id.* at 233–34.[3] Furthermore, a search of the records revealed no evidence of a divorce. Based on these facts, the court found the presumption to be rebutted. *Id.* at 233.

According to *Steele,* the decisions in *Dolan* and other cases in which the presumption regarding the second marriage was found rebutted is attributable to the fact that the equities weighed in favor of the surviving spouse of the first marriage. 472 F.2d at 53. This explanation is curious, however, since in *Dolan* the court suggested that the presumption of validity of the second marriage should be *upheld* only when equities weigh in its favor. Specifically, the court found that

> In contrast to [those] cases holding the presumption to have been rebutted, the decisions that have held the subsequent marriage to be valid on the basis of the presumption are explicable in terms of effectuating a particular public policy

such as upholding legitimacy, favoring the participation in the decedent's estate of one who lived with him as his spouse, and preserving the validity of a marriage where no strong policy would be served by doing otherwise.... We have found no decision of a New York appellate court which declared a prior marriage to have been dissolved and a subsequent one valid where this would have had the effect of disinheriting of a spouse of the earlier marriage without any offsetting advantage in terms of the legitimacy of children or the sharing in the estate by the spouse or children of the second marriage.

381 F.2d at 237. *See also id.* at 237 n. 2.

The equitable approach taken by the *Dolan* court is clearly supported by the dicta of *In Re Meehan's Estate,* 220 A.D. 477, 135 N.Y.S. 723 (1st Dept. 1912), which originally set forth the rationale for and principles underlying the presumption in favor of the validity of a second marriage. In this case, the deceased's siblings challenged the right of the deceased's children to administer his estate, claiming that the children were products of an invalid marriage. The basis for this claim was the deceased's alleged prior marriage to another woman who made no claim to share in his estate and from whom, it was asserted, he was never divorced. Under these circumstances, the court gave greater weight to the presumption in favor of the validity of the second marriage than to the contrary presumption in favor of the continuance of the first marriage. *Id.* 135 N.Y.S. at 725. In reaching this result, the court made the following observations:

> The law indulges in presumptions from the necessities of the case in the absence of sufficient evidence to establish the fact to be proved. While the known facts may be insufficient of themselves to justify a particular inference, they

---

**3.** Note that a similar argument could be put forth in the present case. Assuming the credibility of Juanita Boyd's testimony, Edward Boyd impliedly represented to her that he had never been married, rather than that he had been married and divorced. One might infer from Mr. Boyd's failure to inform Mrs. Boyd of the prior marriage that the prior marriage was never terminated by divorce.

may tend to weaken or strengthen a particular presumption. There can consequently be no ironclad rule and as the surrounding circumstances of different cases are rarely the same, precedents in this class of cases can rarely be controlling.

135 N.Y.S. at 725. In the particular case before it, the court found it appropriate to accord greater weight to the presumption in favor of the second marriage than to the countervailing presumption of continuance, given the long duration of the second marriage, the favorable attitudes towards that marriage of friends and relations, the birth of children to that marriage, and the conduct of the first wife. *Id.*

Clearly, the implication of *In Re Meehan's Estate*, as interpreted by the *Dolan* court, is that where the equities do not weigh as heavily in favor of the second marriage, the presumption in its favor need not be accorded such great weight. Chief among the equities to be considered is whether there are children of the second marriage, as is indicated by the following oft-cited passage:

A presumption like unto that which assumes legitimacy is also indulged in behalf of a second marriage, even though children, the fruit thereof, are not involved. There it finds impulse in the law's jealousy for the order of society. But the zeal of the law, which would

prefer to find matrimony rather than vice, increases in its benign extravagance when it is called to the defense of legitimacy. That which is one of the strongest presumptions known to the law, when invoked in behalf of marriage, is said to be strengthened when its shield is raised above a child.

*In re Biersack*, 96 Misc. 161, 159 N.Y.S. 519, 523 (Sur. Court, Kings County, 1916) (citing *Hynes v. McDermott*, 91 N.Y. 451, 458 (1883)). ("The law presumes morality, and not immorality; marriage, and not concubinage; legitimacy and not bastardy.").

Admittedly, reliance on equitable considerations, rather than a bright-line rule can lead at times to irreconcilable results that have little precedential value. *Compare In Re Terry's Estate*, 32 Misc.2d 470, 222 N.Y. S.2d 865 (Sur. Court, New York County 1961) with *Matter of the Estate of Bihanskyj*, 55 A.D.2d 836, 390 N.Y.S.2d 322 (4th Dept.1976).[4] It is safe to assume, however, given the above-cited statements from *Meehan* and *Hynes* that where, as here, the second marriage was of short duration and yielded no children, the presumption in favor of its validity need not be rebutted by "the most cogent and satisfactory evidence." *Hynes, supra,* 91 N.Y. at 458. On the other hand, where the second wife asserts a claim as a potential beneficiary, in contrast to the situation in *Dolan* where there was no contest between two wives,

---

4. In *Terry, supra,* the decedent's first wife, who lived with the decedent for ten years before being abandoned by him, testified that she had never been divorced. This testimony was supported by evidence that the decedent had remained in New York his whole life and the decedent's earlier statement that he was "single," rather than divorced, at the time of his second marriage. 222 N.Y.S.2d at 866. Based on this evidence, the court found the presumption in favor of the validity of the second marriage to be rebutted, even though the second wife had lived with the deceased for sixteen years until the time of his death. *Id.*

The *Terry* decision contrasts with *Bihanskyj, supra,* where the second of two wives was found entitled to the right of election from the estate of the deceased husband. As in *Terry,* both marriages lasted several years, the first one in the Ukraine, and the second in the United States. Despite the fact that the decedent's will left all his property to his daughter, who was born to the first marriage, the court upheld the presumption in favor of the validity of the second marriage. 390 N.Y.S.2d at 324. This presumption was deemed unrebutted by the presentation of the decedent's birth certificate and certificate of marriage to the first wife, and the daughter's assertion that her parents were never divorced. *Id.* According to the court, there should be "some affirmative affidavit or other proof that the first marriage was valid and not terminated prior to the second marriage, 'even though this might require the proof of a negative ....'" *Id.* (quoting *Apelbaum v. Apelbaum,* 7 A.D.2d 911, 183 N.Y.S.2d 54). Furthermore, the court deemed the husband's abandonment of his first wife in the Ukraine as "sufficient to destroy the presumption that the marriage continues to exist merely because of evidence that it once was entered into." *Id.*

the evidence rebutting the presumption ought to be persuasive.

The record in this case contains testimony from both the wife and daughter of the first marriage to the effect that there was no divorce. This testimony was bolstered by evidence indicating the absence of a record of a divorce in the two locations where it was most likely to have been procured. Given the parameters outlined above for applying the presumption in favor of the validity of the second marriage in this case, and recognizing the ALJ's inherent power to make his own findings of credibility, I find that this constituted substantial evidence in support of the Secretary's determination, and that such determination was not contrary to law. Accordingly, the decision of the Secretary is affirmed.