SUMMARY ORDER
Plaintiff-Appellant Yanet Dishmey Rosario De George (“De George”) appeals from a judgment of the United States District Court for the Southern District of New York (Sweet, J.) dismissing all of her claims arising out of the death of her purported husband Milton George (“George”) in the crash of American Airlines Flight 587. De George argues that the district court erroneously concluded that Denise Valderrama was George’s surviving spouse, ruling in favor of Appellees Dawind George and Maria Diaz, the Co-Administrators of Milton George’s estate (the “Co-Administrators”). The Co-Administrators successfully argued to the district court that George never dissolved his marriage with Valderrama and, therefore, that De George’s marriage to George is invalid as bigamous. De George asserts that she is George’s legal wife, alleging that Valderrama’s marriage to George was a “sham” or “green card” marriage and that federal immigration law therefore renders it “void ab initio.” We assume the parties’ familiarity with the facts, the procedural history, and the issues on appeal.
When related cases filed in various federal districts have been consolidated for pre-trial purposes before one court under 28 U.S.C. § 1407(a), “under the rule of Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), a transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed.” Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir.1993) (citation modified). The question of who is eligible to collect a portion of the wrongful death settlement from the George estate as his surviving spouse is a question of state law.[1] See, e.g., De Sylva v. Ballentine, 351 U.S. 570, 580, 76 S.Ct. 974, 100 L.Ed. 1415 (1956) (“[TJhere is no federal law of domestic relations, which is primarily a matter of state concern.”). The choice of law rules for both Texas, the state in which De George commenced her action, and New York, the state in which Valderrama and the Co-Administrators of George’s estate brought their actions, direct that New York State substantive law should determine the validity of Valderrama’s marriage to George as it relates to her right of recovery. See In re Estate of Loveless, 64 S.W.3d 564, 575 (Tex.App. 2001) (noting that while courts have traditionally “used the law of the place a marriage purportedly occurred to determine the validity of the ceremony,” Texas courts after Seth v. Seth have acknowledged that *17 Texas prescribes the most significant relationship approach); Seth v. Seth, 694 S.W.2d 459, 462 (Tex.App.1985) (Texas applies “the most significant relationship approach ... to determine choice of law in a marriage or divorce context.”); In re Petition for Compulsory Accounting in Estate of Farraj, No. 4803 07, 23 Misc.3d 1109, -, 886 N.Y.S.2d 67, -, 2009 WL 997481, at *2 (N.Y.Sur.Ct. Apr. 14, 2009) (New York’s “general rule is that the validity of a marriage is governed by the law of the state where the marriage itself took place.” (citing In re May’s Estate, 305 N.Y. 486, 114 N.E.2d 4, 6 (1953))).
We now address whether the district court correctly applied New York law in determining which of George’s purported wives was the surviving spouse, a question we review de novo. See Travellers Int’l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1575 (2d Cir.1994) (district court’s legal conclusions are reviewed de novo).
The district court framed the issue as requiring an analysis of whether the first wife, Valderrama, was disqualified from recovering as a surviving spouse. The court correctly stated that, under New York law, “ ‘the grounds for disqualifying a spouse from recovering ■wrongful death damages are rather narrow.’ ” De George v. Am. Airlines, Inc. (In re Air Crash at Belle Harbor), No. 02 MDL 1448, 2007 WL 1575251 at *2 (S.D.N.Y. May 30, 2007) (quoting Carty v. Am. Airlines, Inc. (In re Air Crash at Belle Harbor), No. 02 MDL 1448, 2005 WL 1162448, at *8 (S.D.N.Y. May 10, 2005) (Sweet, J.)). Specifically, the applicable New York statute provides that:
(a) A husband or wife is a surviving spouse within the meaning, and for the purposes of [, inter alia, the statute governing the distribution of wrongful death damages], unless it is established satisfactorily to the court having jurisdiction of the action or proceeding that:
(1) A final decree or judgment of divorce, of annulment or declaring the nullity of a marriage or dissolving such marriage on the ground of absence, recognized as valid under the law of this state, was in effect when the deceased spouse died.
(2) The marriage was void as incestuous under section five of the domestic relations law, bigamous under section six thereof, or a prohibited remarriage under section eight thereof.
(3) The spouse had procured outside of this state a final decree or judgment of divorce from the deceased spouse, of annulment or declaring the nullity of the marriage with the deceased spouse or dissolving such marriage on the ground of absence, not recognized as valid under the law of this state.
(4) A final decree or judgment of separation, recognized as valid under the law of this state, was rendered against the spouse, and such decree or judgment was in effect when the deceased spouse died.
(5) The spouse abandoned the deceased spouse, and such abandonment continued until the time of death.
(6) A spouse who, having the duty to support the other spouse, failed or refused to provide for such spouse though he or she had the means or ability to do so, unless such marital duty was resumed and continued until the death of the spouse having the need of support.
N.Y. Est. Powers & Trusts Law. § 5-1.2(a).
De George asserts that the marriage between Valderrama and George was a “sham” and “illegal,” and as a result was “void from the beginning” such that the marriage never existed. At least one New York State court has specifically addressed *18 the right of a “green card” or “sham” spouse to recover for a wrongful death resulting from the Flight 587 crash. See Estate of Dominguez, 2002 WL 31844696, at *5-*10 (N.Y.Sur.Ct. Nov. 18, 2002). The Dominguez court found that, without more, a surviving spouse cannot be disqualified pursuant to § 5-1.2(a) merely because the marriage was entered into solely for the purpose of securing permanent resident status. Id.; see also Carty, 2005 WL 1162448, at *8-*10. This Court has likewise noted that “the New York courts have repeatedly held allegedly ‘sham’ or ‘limited purpose’ marriages to be neither void nor voidable, and thus to be dissolvable only by a decree of divorce.” United States v. Diogo, 320 F.2d 898, 907-08 (2d Cir.1963) (concluding that evidence was insufficient to prove the defendants’ marriages, into which they allegedly entered to obtain nonquota immigrant status, were void in the context of a prosecution charging defendants with making false statements by claiming marriage to citizens).
Following the reasoning outlined above, the district court concluded that because De George had not alleged or shown that any of the six circumstances described in § 5-1.2(a) apply to Valderrama and George’s marriage, as a matter of law Valderrama could not be disinherited as a surviving spouse even if it was proved that Valderrama’s marriage to George was a “sham” marriage. We agree that New York law does not prohibit a surviving spouse from recovering even if the marriage was entered into for “sham” or “green card” purposes.
We further note, however, that what the parties appear not to have argued, and thus what the district court did not address, “is that it is also well established in New York law that when a court is confronted with the claim that a formal second marriage is invalid because of the existence of a valid first marriage, a strong presumption of validity attaches to the second marriage.” Grabois v. Jones, 89 F.3d 97, 100 (2d Cir.1996). The question of whether Valderrama is disqualified from recovering — or, as De George originally framed the issue in her Motion to Show Cause, whether De George should be disqualified from recovering — necessarily also involves a determination of which of Milton George’s two ceremonial marriages is valid under applicable New York law.[2] See, e.g., Metro. Life Ins. Co. v. Jackson, 896 F.Supp. 318, 321-24 (S.D.N.Y.1995) (Soto-mayor, J.) (first determining whether first spouse provided sufficient evidence to overcome presumption in favor of second marriage’s validity, then analyzing whether marriage fell under disqualification categories under § 5-1.2).
Both Valderrama and De George have presented official marriage certificates, evidencing that each was party to a ceremonial marriage with George. “The more recent of two ceremonial marriages *19 is presumed valid under New York law. The burden is on the first spouse to rebut this presumption, proving the more recent marriage invalid.” Id. at 321; see also Steele v. Richardson, 472 F.2d 49, 51 (2d Cir.1972); Dolan v. Celebrezze, 381 F.2d 231, 234-38 (2d Cir.1967) (Friendly, J.). Section 6 of the New York Domestic Relations Law “states unambiguously that a second marriage is invalid if either of the parties to that marriage is already married.” Grabois, 89 F.3d at 100 (citing N.Y. Dom. Rel. Law § 6). In light of New York’s presumption in favor of the second of two marriages, the question with which we are presented is whether George was “already married” to Valderrama at the time he married De George. Id. We need not inquire into whether “substantial evidence” exists to overcome the presumption, however, because De George’s counsel conceded at oral argument that no divorce had taken place with respect to George’s prior marriage to Valderrama, nor did De George’s counsel suggest implicitly or explicitly when given the opportunity to do so that there was any other basis for invalidating the George-Valder-rama marriage other than her “green card” sham marriage theory, which is without merit. Steele, 472 F.2d at 51-52. In fact, De George’s proffered evidence indicating that George had initiated (but not completed) divorce proceedings against Valderrama in the Dominican Republic at the time of his marriage to De George further demonstrates that the George-Val-derrama marriage had not been invalidated prior to this point.
We therefore conclude that the George-Valderrama marriage was both “initially valid and remained undissolved,” rendering George’s subsequent marriage to De George void. Id. Accordingly, De George is not entitled to recover as a surviving spouse. The additional arguments De George raises on appeal are no longer relevant and are without merit.
For the reasons stated herein, we AFFIRM the judgment of the district court.

. De George engages in a misguided attempt to use federal immigration law as grounds for her argument that the George-Valderrama marriage was “void ab initio.’’ Although federal immigration law may treat a marriage entered into solely to obtain a "green card” as "void” for purposes of eligibility for favorable immigration status, federal immigration law is not applicable to domestic relations or intestacy determinations, which are governed by state law.

. De George's counsel did not discuss — or even so much as mention — this "well established” rule of New York law in any of her filings below or on appeal. Grabois, 89 F.3d at 100. "Nonetheless, because the issue is a question of law and because we conclude that [ignoring the presumption in favor of a second spouse would] violate [New York] law, we believe it appropriate to consider the issue.” Trustees of the Nat'L Automatic Sprinkler Indus. Pension Fund v. Fairfield County Sprinkler Co., 243 F.3d 112, 116 n. 2 (2d Cir.2001); see also Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.”). Furthermore, the underlying issue of whether De George is disqualified from recovery as a surviving spouse on the basis that Valderrama’s marriage to George remained valid was raised below and on appeal.