**CHEMICAL BANK, Plaintiff,**

v.

**RICHMUL ASSOCIATES, Gold Associates, Murray Associates, K & K Financial Services, Ltd., William M. Mulderig, individually and doing business as the Mulderig Group, Ryderbrook Associates, Ryderbrook Associates I, Ryderbrook Associates II, Ryderbook Associates III, Ryderbrook Associates IV, 17 Goshen Corp., Mulfra Associates, Joseph & Associates, Alvin Q. Jarrett, B. Roland Freasier, Jr., Jerome Saitta, Gary Koval and Janet Adams, Defendants.**

**No. 87 Civ. 1637 (MP).**

United States District Court, S.D. New York.

Aug. 17, 1987.

---

Zalkin, Rodin & Goodman by Alan Nisselson, Andrew D. Gottfried, Richard S. Toder, New York City, for plaintiff.

Podvey, Sachs, Meanor & Catenacci by J. Barry Cocoziello, Newark, N.J., for defendants Alvin Q. Jarrett and B. Roland Freasier, Jr.

William M. Mulderig by William J. Sands, Tallman, N.Y., for other defendants.

## OPINION

MILTON POLLACK, Senior District Judge.

Plaintiff Chemical Bank has applied for an award of attorneys' fees and expenses, for its filing and maintaining of an interpleader action. The fund in controversy has been distributed by stipulation entered into by the defendants in this action, subject to a reservation of Chemical's right to claim its attorneys' fees and expenses.

## BACKGROUND

Chemical Bank was a creditor of William M. Mulderig and several entities he controlled ("the debtors"). According to Chemical, as of February 1987, it had outstanding loans to the debtors of $16,107,-528, which were past due. Each of the debtors, as evidence of their loans, executed one or more demand notes payable to Chemical. In addition, several others placed assets with Chemical, guaranteeing the debts owed.

Among the collateral guaranteeing the loans were 512,082 shares of Home Beneficial Corporation ("HBC") stock, owned by defendants Alvin Q. Jarrett and B. Roland Freasier, Jr. On February 25, 1987 Chemical sold these shares at a private sale, to the Home Beneficial Corporation, resulting, on February 27, in aggregate gross proceeds to the bank of $17,666,829. Defendants assert that Chemical sold the stock at a discount of 11% from market price. The proceeds from the sale were used by Chemical to satisfy the outstanding loans of the debtors, leaving a surplus of slightly over $1 million, which was tendered to Jarrett and Freasier.[1] The surplus property, some owned by the debtors and some owned by

---

1. In addition to using the income from this sale to satisfy the outstanding debt, Chemical also paid itself $166,749.59 for legal fees and disbursements.

the guarantors, remained in Chemical's possession.

On March 11, 1987, Chemical filed this suit. Chemical's First Claim was for interpleader, under 28 U.S.C. § 1335. Chemical requested relief on the basis of its allegation that it might be exposed to multiple liability based on multiple claims, arising from its possession of surplus collateral for the now-satisfied loans of the debtors. Upon the filing of the suit, Chemical deposited property with the Court, consisting primarily of notes and securities owned by Mulderig or entities he controlled.

Chemical's Second Claim was for a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Chemical asserted that it "has a well-grounded and reasonable apprehension that Jarrett and Freasier may commence litigation to challenge the commercial reasonableness of its private sale of the HBC stock and the application thereof."

Jarrett filed an Answer on April 11, 1987, in which he denied that Chemical had any right to sell his stock. Jarrett asserted that he was entitled to all of the surplus collateral deposited by Chemical with the Court pursuant to the interpleader action. Jarrett also denied that Chemical's sale was commercially reasonable, thus violating the relevant provisions of the Uniform Commercial Code, as enacted in New York.

Jarrett also counterclaimed against Chemical, asserting that Mulderig, acting as his agent, "acted without express or implied authority and beyond the scope of his authority" in pledging Jarrett's stock to Chemical. Jarrett claimed that Chemical had negligently failed to inquire into the scope of Mulderig's agency. Jarrett further claimed that Chemical sold his stock at below market value and that Chemical's application of the proceeds of the sale violated the governing agreements, the UCC and "the laws of the State of New York." Jarrett demanded damages from Chemical, for these alleged violations, of $9,500,000, plus costs and attorney's fees.

Janet Adams, a defendant, served an Answer in which she denied generally the allegations of the Complaint. Adams counterclaimed against Chemical and cross-claimed against Mulderig and Freasier. Both claims were based on an alleged assignation by Freasier and Mulderig of 6250 shares of HBC stock to a nominee of Adams, made in consideration for a loan of $275,000 by Adams. As relief, Adams sought a judgment of ownership of 6250 shares of HBC stock or, in the alternative, the sum of $275,000. Adams did not claim, nor does there appear to have ever been, any HBC stock among the property deposited by Chemical with the Court pursuant to the interpleader action.

On April 22, 1987, Mulderig, acting on behalf of himself and several other defendants, filed a motion to dismiss the complaint, arguing that the interpleader count was "unnecessary" because a stipulation was being prepared by all defendants to tender the assets at issue to Freasier and Jarrett, and that the declaratory judgment count was untimely. Because all parties were not properly before the Court, the motion was denied on May 7, 1987.

Mulderig then filed an Answer for himself and several other defendants on May 28, 1987. Mulderig denied generally the allegations of the Complaint. On the same day, Freasier filed an Answer to the Complaint, largely identical to the one filed earlier by Jarrett. However, Freasier added a second counterclaim, in which he alleged that Chemical defaulted on its duty to advise him that the loans which he had guaranteed were in default. Freasier stated that he would not have guaranteed the loans if he had been informed of their true status. Freasier demanded damages in excess of $6,000,000, an accounting of all loans whose debt were paid by his guarantee, and interest, costs, and attorneys' fees.

Chemical filed a general denial to the counterclaims of Jarrett and Freasier, and also filed a Third-Party Complaint against William Mulderig. While Chemical denied all liability to Jarrett or Freasier, it pleaded that if any liability were found against it on the claims of Jarrett or Freasier, Chemical should be entitled to indemnification by, or contribution from, Mulderig.

On July 7, 1987, a global stipulation was signed by all parties before the Court, agreeing that all property which had been deposited with the Court, except for certain property owned by two defendants who had not been served, was to be released to Jarrett and Freasier. Chemical was discharged from liability with regard to the property so released, and each of the defendants before the Court was permanently enjoined from commencing or continuing any action for the recovery of the distributed property, or for damages resulting from the release of that property pursuant to the stipulation.

The stipulation expressly preserved the right of Chemical to assert a claim for costs and attorneys' fees in connection with the interpleader action. The stipulation provided that, should Jarrett and Freasier sell or dispose of any of the property returned to them in connection with the stipulation, they should deposit $10,000 with their lawyers, to be held in trust to secure a claim by Chemical for attorney's fees and costs. This provision was expressly without prejudice to Chemical's right to seek satisfaction of any allowed attorneys' fees and costs directly from Jarrett and/or Freasier, in the event that none of the released property was sold or disposed of sufficient to amount to $10,000.

The instant motion was filed on July 31, 1987. Chemical seeks attorney's fees of $24,868.00 and expenses of $1702.44. Plaintiff asserts that it spent approximately sixty billable hours of legal work in researching, drafting and filing the complaint and gathering and depositing property with the Court. Plaintiff further documents approximately an additional 110 billable legal hours it spent in preparing and reviewing correspondence, preparing for and arguing Mulderig's motion to dismiss, preparing for and attending pretrial conferences, and reviewing and executing the final stipulation releasing the property which had been deposited with the Court. In sum, plaintiff seeks to recover for approximately 170 hours of legal time, at rates ranging from $50 per hour to over $200 per hour.

For costs, plaintiff asks compensation for photocopying fees, postage, telephone, secretarial overtime, filing fees, service costs, computer-assisted legal research, and newspaper advertising charges.

## DISCUSSION

The general rule is that a party properly invoking interpleader is entitled to costs and attorney's fees, particularly when that party asserts no claim upon the res deposited with the Court. *See A/S Krediit Pank v. Chase Manhattan Bank*, 303 F.2d 648, 649 (2d Cir.1962); *Sparta Florida Music Group v. Chrysalis Records*, 566 F.Supp. 321, 322 (S.D.N.Y.1983) ("A disinterested and innocent stakeholder, who has been required to expend time and money to participate in a dispute not of his own making and the outcome of which has no impact upon him, is entitled to costs and attorneys fees."). Here, Chemical was such a "disinterested stakeholder," holding excess collateral for a satisfied loan, and asserting no claim thereto.

However, several factors militate against a full award of the fees Chemical requests. First, where the parties to an interpleader action have, as in this case, agreed to the disposition of the collateral deposited with the Court, the necessary services of the plaintiff's attorney are essentially limited to the preparation of the complaint, effecting service of process to obtain jurisdiction of the claimants and handling any motions prior to the settlement.

There was no real complexity of this interpleader action, no significant discovery, and no extensive motion practice. Fees granted for such services are usually nominal. *See* J. Moore, J. Lucas, G. Grotheer, Jr., 3A *Moore's Federal Practice*, ¶ 22.16[2] at 22–174 (1987); *John Hancock Mutual Life Ins. Co. v. Doran*, 138 F.Supp. 47, 50 (S.D.N.Y.1956) (Kaufman, J.) ("counsel fees to stakeholders, when awarded, should be kept small, both out of fairness to the eventual recipient of the fund and in recognition of the minimal work necessary to institute a suit in interpleader.").

Second, a party may recover only for costs attributable to interpleader, not for any expenses incurred as a part of its ordinary conduct of business. Chemical's role in determining the proper owner of surplus collateral for a satisfied loan is not dissimilar to that of an insurance company which seeks a judicial determination of the proper beneficiary of an insurance policy. Such expenses are not recoverable. *Travelers Indemnity Co. v. Israel*, 354 F.2d 488, 490 (2d Cir.1965); *Sparta*, 566 F.Supp. at 322 ("costs and attorneys fees incurred in contesting claims which arise in the ordinary course of business may not be transferred by invoking interpleader.").

There is some facial basis for Jarrett's and Freasier's contention that Chemical decided to invoke the judicial process for its own protection from future suits challenging the lawfulness of its sale of their stock. Plaintiff may not recover fees for legal expenses unrelated to the interpleader, such as those resulting from plaintiff's second claim for declaratory judgment and its impleading of Mulderig in response to the counterclaims against it for alleged misconduct in liquidating Jarrett's and Freasier's stock.

Third, the utility of Chemical's filing of an interpleader action in federal court in this case was allegedly questionable. Chemical apparently had no notice of adverse or competing claims to the surplus collateral and no legal or factual basis upon which to expect any such competing or adverse claims. Thus the plaintiff may have lacked actual cause to burden the impleaded fund with the cost and expenses of the interpleading action. See *Paul Revere Life Ins. Co. v. Riddle*, 222 F.Supp. 867, 868 (E.D.Tenn.1963) (A stakeholder has a right to avoid the vexation and expense of resisting adverse claims by filing an interpleader suit, but that did not include the right to impress the fund with the expense of the interpleader action.). Moreover, defendants note that, from the inception of the interpleader action, Mulderig, who represented the parties who owned most of the surplus collateral, repeatedly stated that he would stipulate that Jarrett and Freasier were entitled to the surplus

collateral. Such a stipulation indeed ended the interpleader four months after the suit was filed.

An analysis of the time sheets of Chemical's attorneys indicates that much of the legal services cited was unrelated to the complaint in interpleader; these items represent general services for the bank in its controversy over the manner in which the collateral was liquidated and other concerns connected with the bank's operations. For example, accounting for surplus proceeds, analysis of subrogation issues, research and preparation of pleadings on the issues of commercial reasonableness of its liquidation of the collateral are not compensable as interpleader services, falling more under the category of overhead for the ordinary course of the banking business. Additionally, the Court considers the fees claimed to be unnecessarily high, considering the relative simplicity of this interpleader action and the fact that no adverse claims to the fund were ever actually filed.

Giving effect to all the facts and circumstances, the time spent, the standing of counsel, and the colossal amounts involved, the Court, in its discretion, fixes the sum of $6500 as Chemical's reasonable attorneys' fee for maintaining this interpleader action. This sum consists of: 45 hours of an associate's time, at $100 per hour, for legal research and the drafting of court papers; 10 hours of a legal assistant's time at $50 per hour, for the compilation of the collateral deposited with the Court; and 10 hours of a partner's time at $150 per hour, for review all of the above, and preparation for and attendance at conferences and motions before the Court. Disbursements are also allowed for court fees, costs of service, and newspaper advertising charges, totalling $857.16.

## CONCLUSION

Defendants Jarrett and Freasier are ordered to pay to plaintiff the sum of $7357.16 from the assets which were released to them by the stipulation dated July 6, 1987. This sum shall be paid as and when any part or parts thereof are sold or

otherwise liquidated. If an amount of said assets sufficient to cover the amount allowed herein is not sold or disposed of within a reasonable time from the date of this Opinion, Jarrett and Freasier shall be jointly and severally liable for the said amount and an Order may be applied for, the Court hereby reserving jurisdiction for that purpose.

So Ordered.