Alan PRESSMAN, Plaintiff,

v.

The ESTATE OF Guido STEINVORTH, Olimpia Pena Tejera, Inga Steinvorth De Goetz, Gisela Steinvorth De Junkers, individually and as potential representatives of the Estate of Guido Steinvorth; and The Republic of Venezuela, Defendants.

Olimpia Pena TEJERA, individually and as the representative and heir of the Estate of Guido Steinvorth, Plaintiff,

v.

Alan PRESSMAN, Defendant.

Nos. 86 Civ. 0395 (RLC), 87 Civ. 6105 (RLC).

United States District Court, S.D. New York.

May 9, 1995.

---

D'Amato & Lynch, New York City, for plaintiffs; William P. Larsen, of counsel.

Beldock, Levine, & Hoffman, New York City, for defendant Tejera; Ronald C. Minkoff, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Pursuant to the order of this court issued August 17, 1994, *Pressman v. Estate of Steinvorth*, 860 F.Supp. 171, 177 (S.D.N.Y. 1994) (Carter, J.), plaintiff Alan Pressman seeks attorney's fees and expenses incurred in the commencement of this interpleader action in the amount of $30,579.94.

### I.

Guido Steinvorth, a Venezuelan citizen, died in March, 1984, leaving a will naming defendant Olimpia Pena Tejera the universal heir of his estate. The will was subsequently contested in the Venezuelan courts. At the time of Steinvorth's death, Pressman, a New York attorney, was holding various assets for Steinvorth. In 1984, several claimants to the estate filed numerous actions (the "earlier actions") against Pressman in federal court and New York state court seeking to recover some of those assets. In response, Pressman commenced this interpleader action in 1986.

In the course of this action, Pressman has sought not only to pay the contested funds into court but also to recover attorney's fees and expenses he incurred in connection with the earlier actions. Defendant Pena has brought a counterclaim and a separate action to force Pressman to provide an accounting of the Steinvorth assets in Pressman's possession. The separate accounting action was subsequently consolidated with this interpleader action.

In 1989, this court ordered Pressman to turn over to the court all Steinvorth funds in his possession. *Pressman v. Estate of Steinvorth*, No. 86 Civ. 0395, 1989 WL 74937 (S.D.N.Y. Aug. 1, 1989) (Carter, J.). Finding that he had not provided an adequate accounting of all the funds, however, the court refused to discharge him. *Id.* The court also stayed all proceedings in the case pending decision on the Steinvorth will by the Venezuelan courts. In 1991, the Venezuelan Supreme Court named Pena universal heir, and this court subsequently awarded the interpleader funds to her. *Pressman*, 860 F.Supp. at 177. The court denied motions brought by Pressman for Rule 11 sanctions against Pena and for attorney's fees for Pressman's efforts in defending the Steinvorth estate in the earlier actions. *Id.* at 182. The court did, however, grant Pressman attorney's fees and expenses incurred in commencing the interpleader action. *Id.* at 183. The court stressed that the fees should be "a relatively small amount simply to compensate for initiating the proceedings" and noted that Pressman was "not entitled to be reimbursed for any other expenses—i.e. the costs and fees associated with the Earlier Actions and his defense of the claims against him for an accounting." *Id.*

### II.

District courts have wide discretion in awarding costs and attorney's fees to disin-

terested stakeholders. *Clarkson Co. v. Shaheen*, 533 F.Supp. 905, 919 (S.D.N.Y.1982) (Owen, J.). Fees may be awarded to cover the costs of preparing, filing and litigating the interpleader action, *see, e.g., Algemene Bank Nederland, N.V. v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi, A.S.*, 748 F.Supp. 177, 184 (S.D.N.Y.1990) (Leval, J.), but they may not be awarded to cover costs that the stakeholder would have incurred in the ordinary course of business, *Chemical Bank v. Richmul Assoc.*, 666 F.Supp. 616, 619 (S.D.N.Y.1987) (Pollack, J.), or to cover costs regarding any portion of the interpleader action in which the stakeholder was an interested party. *Gould, Inc. v. Pension Benefit Guar. Corp.*, 589 F.Supp. 164, 169 (S.D.N.Y.1984) (Motley, J.). The amount of the fees awarded varies according to the complexity of the action and the amount of discovery and motion practice involved. *Chemical Bank*, 666 F.Supp. at 619.

The Second Circuit ruled in 1983 that attorneys seeking fees bear the burden of proving their expenses by submitting contemporaneous time records specifying "the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir.1983). Since then, this circuit has allowed attorneys to submit summaries of contemporaneous records accompanied by affidavits stating that the summaries are accurate and based on contemporaneous records. *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir.1994).

■ In support of his fee request, Pressman has submitted invoices accompanied by an affidavit by attorney William P. Larsen, III stating that the invoices "were issued by D'Amato & Lynch for the services and disbursements incurred with respect to this action and related matters." (Larsen Aff. ¶ 3.) Pena avers that Larsen did not start working on the case until six years after service of the complaint and requests the court to deny the fee request on the grounds that the application "is not supported by the affidavit of someone with personal knowledge of the work done to commence the interpleader." (Minkoff Aff. ¶ 5.) This objection is not fatal to the fee request. The purpose of an affidavit in this context is not to reiterate on the basis of actual knowledge the specific time charges in the time records but rather to assure the court that the time records are accurate. *See, e.g., Pastre v. Weber*, 800 F.Supp. 1120, 1124 (S.D.N.Y.1991) (Knapp, J.) (permitting use of computer print-outs of hours where counsel represented that printouts set forth verbatim the entries on actual time sheets). Pena does not question the accuracy of the invoices, the existence of the underlying records, or the competence of Larsen to affirm the accuracy of the invoices and time records, so the court has no basis for denying the fee request in full.[1]

■ Pena also contends that the invoices are insufficiently specific, and this objection is more serious. Although the invoices generally break down the type of work performed by Pressman's counsel, stating, for example, "telephone conversation," "prepare correspondence," or "review of file," they often fail to state the legal matter that the activity concerned, for example the interpleader action or the accounting action. This information is crucial to the court's determination because Pressman may be reimbursed only for his counsel's work in commencing the interpleader action. Larsen states in his affidavit that the invoices include only "those services and expenses relating directly to the preparation and actual filing and service of the interpleader complaint," (Larsen Aff. ¶ 2), but this statement is not credible because the invoices include many charges unrelated to these matters. *See* discussion *infra* pp. 367–69. Therefore, charges for which

---

1. The court notes that invoices are not considered contemporaneous time records, that Larsen does not aver that the invoices were based on contemporaneous time records, and that Pena would have been justified in challenging the time records on these grounds. *See Curtis Publishing Co. v. TMM, Inc.*, No. 92 Civ. 3026, 1994 WL 570921, at *1 (S.D.N.Y. Oct. 17, 1994) (Haight, J.) (noting that invoices would not satisfy the requirements of *Carey* but granting fees where opposing party did not challenge the adequacy of the documentation).

there is no legal matter specified will not be reimbursed.[2]

### III.

In 1985, Pressman responded to letters rogatory issued in the Venezuelan will proceedings in 1985. He argues that he should be reimbursed for the work his attorneys performed in this regard because the letters rogatory pertained to "the very action[s] which led to the filing of the interpleader." (Larsen Reply Aff. ¶ 10.) This argument ignores the court's previous holding that Pressman may not be reimbursed for his defense in the earlier actions, so Pressman will not be reimbursed for these charges.

In November, 1987, Pressman moved to consolidate Pena's action for an accounting with the interpleader action. The consolidation was necessitated primarily by the fact that the accounting action and Pena's accounting counterclaims were similar. Had there been only an interpleader claim and no counterclaims or separate accounting action, the motion would not have been necessary. Since Pressman may not be reimbursed for costs incurred in connection with the accounting action, he will not be reimbursed for bringing this motion.

Pressman seeks reimbursement for work performed by his attorneys in seeking a bond to cover any costs incurred in the litigation instituted by Pena. In 1988, the court found that the issues involved in the action for an accounting were "at best premature and contrived," that Pena might well be subject to Rule 11 sanctions by the end of the litigation, and that Pressman was consequently entitled to have Pena deposit such a bond with the court. *Pressman v. Estate of Steinvorth*, No. 86 Civ. 0395 (S.D.N.Y. Aug. 9, 1988) (Carter, J.). Contrary to Pressman's contention that "the bond for cost [sic] was strictly attendant to the interpleader action," (Larsen Reply Aff. ¶ 14), the bond was intended to protect Pressman solely from the consequences of "the litigation instituted by Pena," *Pressman v. Estate of Steinvorth*, No. 86 Civ. 0395 (S.D.N.Y. Aug. 9, 1988) (Carter, J.), i.e., the accounting action. Therefore, Pressman is not entitled to reimbursement for any ex-

penses incurred in seeking the bond. Pressman also seeks reimbursement for the expenses he incurred in moving for Rule 11 sanctions against Pena in an attempt to force her to comply with this court's order to post a bond with the court. Since this motion was related to the bond action and thus to the action for an accounting, rather than to the interpleader action, Pressman is not entitled to recover the costs he incurred in bringing this motion.

From September 6, 1985, when Pressman's attorneys received the case, through October 2, 1985, when they started researching the availability of an interpleader action, they conferred with Pressman, prepared memoranda to the file, corresponded with Venezuelan counsel, and researched New York estate law. This work does not relate to the commencement of the interpleader action and will not be reimbursed.

From January 8, 1992 through July 23, 1992, Pressman's counsel translated and studied the opinion issued by the Venezuelan Supreme Court and communicated with Venezuelan counsel regarding the import of that decision. Pressman argues that this work was necessary to reach the conclusion "that the plaintiff [sic] was finally determined to be the sole heir as well as the proper representative of the estate of Guido Steinvorth." (Larsen Reply Aff. ¶ 15.) However, Pressman had deposited the interpleader funds into court several years previously, so in his role as stakeholder he had no need to assess Pena's entitlement to the money. *See, e.g., Algemene Bank Nederland, N.V.*, 748 F.Supp. at 184 (disallowing portion of fees "incurred in analysis of the merits of the competing claims"). Therefore, this work will not be reimbursed.

In direct contravention of this court's order that Pressman may not be reimbursed for costs associated with the accounting actions, Pressman seeks to recover the costs he incurred in the following: answering the counterclaims and responding to the earlier actions, moving for a stay of discovery in the accounting action pending decision by the

---

2. This category includes correspondence with American Home, an insurance carrier whose role Pressman has not shown to be related to the interpleader action.

Venezuelan courts, moving for a protective order in response to the discovery sought by Pena in the course of her accounting claims, and otherwise opposing the discovery that Pena sought in the course of bringing the counterclaims and earlier actions. Clearly, Pressman cannot recover for any of these charges.

In June, 1988, Thomas Curtin, a member of Pressman's legal team, left the case. Pressman requests reimbursement for charges incurred in connection with activities necessitated by the change of counsel, including attending a conference regarding the substitution of counsel and preparing a stipulation of substitution, but Pressman is not entitled to be reimbursed for work performed solely as a result of his counsel's staffing patterns. Pena asserts that eight charges between July 7, 1987, and November 18, 1987, should also be disallowed because they were incurred by an associate newly assigned to the case who needed to familiarize himself with the case and with the law. However, Pena provides no evidence for her assertion that staffing patterns were the sole reason that the expenses were incurred, so the charges will not be disallowed for this reason.

Since Pressman is entitled to reimbursement for commencing the interpleader action, he will be reimbursed for the costs that his attorneys incurred in preparing the petition, depositing the money into the court, serving the claimants, preparing an order discharging the stakeholder, and attending conferences and hearings prior to his discharge. Pena notes that Pressman made an unsuccessful attempt at service before he eventually served the defendants and that Pressman should not be reimbursed for the unsuccessful attempt. (Minkoff Aff. ¶ 12.)

Pressman avers, however, that service was complicated both by the complexities of effecting service under the parameters of international law and by the difficulty of locating the defendants, who resided in Venezuela. Therefore, Pressman will be reimbursed for all attempts at effecting service.

A more plausible reason to deny Pressman at least some reimbursement for preparing, serving and filing the complaint is that the complaint included a claim in *quantum meruit* seeking reimbursement from the Steinvorth estate for legal services allegedly performed on behalf of the estate in the earlier actions. Pressman is not entitled to legal fees for bringing this claim because it pertained solely to the earlier actions. Since the invoices do not separate the work performed in furtherance of the interpleader action from the work performed in furtherance of the *quantum meruit* claim, all work performed in connection with the preparation and defense of the interpleader complaint will be reimbursed at a rate of 50%. Additionally, the invoices for dates prior to March 22, 1988, lump together all the charges incurred in a given day. Since the vast majority of the charges for which Pressman seeks reimbursement have been disallowed by the court, he will be reimbursed at a rate of 25% instead of 50% whenever allowable charges have been lumped together with disallowed charges or where counsel attended a conference that concerned a number of matters besides the interpleader motion.[3] *See Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir.1994) (affirming 30% reduction in attorney's fees to exclude time spent on non-compensable matters). Under these guidelines, Pressman is entitled to reimbursement of $2438.07 for attorney's fees (the specific charges included in each category are set out in the appendices).[4]

---

**3.** Pena urges that because "most of the fees Pressman seeks do not relate to commencing the interpleader," the court should reject the entire fee application. (Minkoff Aff. ¶ 3.) *Given that the court can amply compensate for the disallowed fees by reducing the fees awarded by 75%, there is no need to take the drastic step of disallowing all fees.*

**4.** The fees have been calculated using the following rates:

1) September 6, 1985, through November 4, 1986: $135/hour for partner R.E. Meshel and $85/hour for associates Andrew J. Entwhistle and Samuel G. Adler.

2) July 8, 1987, through January 8, 1988: $145 for partner R.E. Meshel and $85/hour for associate Thomas Curtin.

3) March 22, 1988, through March 30, 1989: $95/hour for associates Thomas Curtin and "JMG."

Pressman also seeks reimbursement for disbursements in the amount of $2,810.44. Since it is not possible to separate the disbursements made in connection with the commencement of the interpleader action from those made in connection with activities for which Pressman may not be reimbursed, and since the disallowed activities constitute the vast majority of the activities for which Pressman seeks reimbursement, the court will award Pena $281.04 as reimbursement for disbursements, constituting 10% of the total claimed. Therefore, the total amount awarded to Pressman is $2,719.11.[5]

## IV.

Plaintiff Alan Pressman is entitled to reimbursement from the interpleader funds for the fees and expenses he incurred in bringing this interpleader action in the amount of $2,719.11.

**IT IS SO ORDERED.**

### Appendix A
### Charges Reimbursed at a Rate of 50%

| Date | Attorney | Hours | Rate | Total | |
|------|----------|-------|------|-------|---|
| 10/5/85 | AJE | .75 | 85.00 | 63.75 | |
| 10/18/85 | REM | .25 | 135.00 | 33.75 | |
| 11/19/85 | AJE | 3.50 | 85.00 | 297.50 | |
| 11/20/85 | AJE | .75 | 85.00 | 63.75 | |
| 11/23/85 | AJE | 1.25 | 85.00 | 106.25 | |
| 11/26/85 | AJE | .25 | 85.00 | 21.25 | |
| 12/3/85 | AJE | .50 | 85.00 | 42.50 | |
| 12/9/85 | AJE | .25 | 85.00 | 21.25 | |
| 12/19/85 | AJE | 1.00 | 85.00 | 85.00 | |
| 1/10/86 | REM | .25 | 135.00 | 33.75 | |
| 1/13/86 | SGA | .25 | 85.00 | 21.25 | |
| 1/23/86 | SGA | .50 | 85.00 | 42.50 | |
| 2/20/86 | SGA | 1.00 | 85.00 | 85.00 | |
| 2/21/86 | SGA | .50 | 85.00 | 42.50 | |
| 3/13/86 | SGA | .50 | 85.00 | 42.50 | |
| 3/20/86 | SGA | .25 | 85.00 | 21.25 | |
| 3/21/86 | SGA | .25 | 85.00 | 21.25 | |
| 5/9/86 | SGA | .50 | 85.00 | 42.50 | |
| 5/12/86 | SGA | .25 | 85.00 | 21.25 | |
| 5/14/86 | SGA | 1.75 | 85.00 | 148.75 | |
| 5/19/86 | SGA | .75 | 85.00 | 63.75 | |
| 5/30/86 | SGA | | | 170.00 | |
| 7/30/86 | SGA | | | 30.00 | |
| 9/10/86 | SGA | | | 90.00 | |
| 7/17/87 | TC | | | 42.00 | |
| 9/10/87 | TC | | | 24.00 | |
| 9/24/87 | REM | | | 30.00 | |
| 10/26/87 | TC | | | 30.00 | |
| 10/30/87 | TC | | | 174.00 | |
| 11/2/87 | TC | | | 24.00 | |
| 11/4/87 | TC | | | 30.00 | |
| 11/17/87 | TC | | | 90.00 | |
| 11/18/87 | TC | | | 42.00 | |
| | | | | 2097.25 | subtotal |
| | | | | * .5 | |
| | | | | 1048.63 | TOTAL |

Pena does not object to these rates, and they do not fall outside the range of reasonable rates for attorneys of similar skill and experience in this district. *See Wahad v. Coughlin*, 870 F.Supp. 506 (S.D.N.Y.1994) (Motley, J.) (approving attorney's fees of $350 and $300 per hour for attorneys at partner level and $150 per hour for attorney at associate level).

**5.** Pressman originally requested reimbursement of a total of $30,579.94 in fees and expenses.

Appendix B

Charges Reimbursed at a Rate of 25%

| Date | Attorney | Hours | Rate | Total |
|------|----------|-------|------|-------|
| 10/2/85 | AJE | 3.50 | 85.00 | 297.50 |
| 10/3/85 | AJE | 10.50 | 85.00 | 892.50 |
| 10/7/85 | AJE | .75 | 85.00 | 63.75 |
| 10/17/85 | AJE | 1.00 | 85.00 | 85.00 |
| 10/18/85 | AJE | 1.75 | 85.00 | 148.75 |
| 10/21/85 | AJE | .25 | 85.00 | 21.25 |
| 10/28/85 | AJE | 4.75 | 85.00 | 403.75 |
| 10/31/85 | AJE | .75 | 85.00 | 63.75 |
| 11/1/85 | AJE | .75 | 85.00 | 63.75 |
| 11/6/85 | AJE | 2.00 | 85.00 | 170.00 |
| 11/11/85 | AJE | 2.50 | 85.00 | 212.50 |
| 11/26/85 | AJE | .25 | 85.00 | 21.25 |
| 1/10/86 | SGA | .50 | 85.00 | 42.50 |
| 2/20/86 | SGA | 1.00 | 85.00 | 85.00 |
| 7/8/86 | SGA | | | 150.00 |
| 9/9/86 | SGA | | | 90.00 |
| 9/11/86 | SGA | | | 90.00 |
| 10/15/86 | SGA | | | 30.00 |
| 10/22/86 | SGA | | | 20.00 |
| 7/8/87 | TC | | | 84.00 |
| 7/13/87 | TC | | | 66.00 |
| 7/21/87 | TC | | | 102.00 |
| 8/4/87 | TC | | | 12.00 |
| 8/24/87 | TC | | | 186.00 |
| 9/8/87 | TC | | | 150.00 |
| 9/10/87 | TC | | | 24.00 |
| 9/30/87 | TC | | | 102.00 |
| 10/26/87 | TC | | | 30.00 |
| 11/16/87 | TC | | | 138.00 |
| 12/8/87 | TC | | | 264.00 |
| 12/9/87 | TC | | | 30.00 |
| 12/18/87 | TC | | | 126.00 |
| 12/28/87 | TC | | | 264.00 |
| 1/4/88 | TC | | | 186.00 |
| 1/5/88 | TC | | | 282.00 |
| 3/29/88 | TC | 2.70 | 95.00 | 256.50 |
| 3/13/89 | JMG | 1.20 | 95.00 | 114.00 |
| 3/16/89 | JMG | 2.00 | 95.00 | 190.00 |

|  |  |  |  | 5557.25 | subtotal |
|  |  |  |  | * .25 |  |
|  |  |  |  | = 13898.44 | TOTAL |

Noting that this constitutes approximately 15% of the interpleader funds, Pena argues that the application should be rejected. Since amount awarded in this opinion for fees and expenses constitutes a mere 9% of the original amount requested, the court need not reach the merits of this argument.