896 F.Supp. 318 (1995)
METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,
v.
Karen C. JACKSON and Stephanie R. Jackson, Defendants.
No. 94 Civ. 7725 (SS).
United States District Court, S.D. New York.
August 9, 1995.
*319 Alan E. Lazarescu, Metropolitan Life Insurance Company, Law Department, New York City (Sherry Laird, of counsel), Attorneys for plaintiff.
Louis Riger, New York City, for defendant, Karen C. Jackson.
Delamater & Berlowitz, New York City, for defendant, Stephanie R. Jackson.

OPINION AND ORDER
SOTOMAYOR, District Judge.
In this interpleader action, plaintiff Metropolitan Life Insurance Company ("MetLife"), requests that the court determine which of two women, Stephanie R. Jackson ("S.R.Jackson") or Karen C. Jackson ("K.C. Jackson"), is the legal widow of its insured, Robert B. Jackson. S.R. Jackson seeks a summary judgment declaration that she is the insured's lawful widow which is opposed by K.C. Jackson. MetLife does not oppose *320 the motion for summary judgment, but seeks the costs and attorney's fees it incurred in connection with this interpleader action. For the reasons discussed below, S.R. Jackson's motion for summary judgment is granted, and MetLife's motion for costs and attorney's fees is granted to the extent consistent with this Opinion and Order.

BACKGROUND
At the time of his death on September 13, 1993, Robert B. Jackson (the "insured"), was covered by a Federal Employees' Group Life Insurance Policy ("Policy"), which was issued to the United States Office of Personnel Management pursuant to the Federal Employees' Group Life Insurance Act ("FEGLIA"), 5 U.S.C. §§ 8701-8716 (1994); 5 C.F.R. §§ 870-874 (1995). The insured failed to designate a beneficiary to the policy. Pursuant to FEGLIA guidelines, if no beneficiary has been named, the proceeds of the policy are payable to the insured's widow. Both S.R. Jackson and K.C. Jackson claim to be the insured's widow for purposes of payment of the proceeds which amount to $236,879, plus interest.
The following facts are undisputed. S.R. Jackson married the insured in Bronx County on October 28, 1967, and has two children from that marriage. K.C. Jackson married the insured in Queens County on December 5, 1989. Both marriages are evidenced by copies of certificates of marriage.
It is also undisputed that the insured was a resident of Bronx or Queens County at all times from the date of his first marriage, in 1967, until his death, in 1993. As to S.R. Jackson's domicile, she stated that she resided in Bronx County for this entire period and no evidence presented suggests otherwise. A search of the records of the counties in which S.R. Jackson and Robert B. Jackson resided revealed no official record of the dissolution of the S.R. Jackson marriage. K.C. Jackson asserts that the insured told her that S.R. Jackson had divorced him, but fails to present any records evidencing such divorce or other dissolution of the S.R. Jackson marriage. S.R. Jackson, the first wife, asserts that she never obtained any legal divorce, annulment or separation judgment against the insured, nor was she served with papers in any such action.

DISCUSSION

I. Summary Judgment
Summary judgment is appropriate if, after drawing all reasonable inferences and ambiguities in the nonmovant's favor, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Greene v. United States, 13 F.3d 577 (2d Cir.1994). To defeat summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and may not rest upon mere "conclusory allegations" or denials but must set forth the facts in controversy that must be determined at trial. See National Union Fire Ins. Co. v. Deloach, 708 F.Supp. 1371, 1379, (1989) (quoting R.G. Group, Inc. v. Horn and Hardart Co., 751 F.2d 69, 77 (2d Cir.1984)). The nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A court must then determine "whether a reasonable juror could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512. A complete failure of proof on an essential element of the nonmoving party's case, on which such party bears the burden of proof at trial, renders all facts immaterial and entitles the moving party to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
In deciding whether to grant summary judgment "the nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir.1992). "If the nonmoving party could not prevail even if the factfinder accepts all of its evidence as true, the moving party is entitled to *321 summary judgment." Pacific Northwest Venison Producers v. Smitch, 20 F.3d 1008, 1013 (9th Cir.1994).

II. Determination of the "Lawful Widow"
Because the insured made no formal designation of a beneficiary, the proceeds of the policy are payable to the insured's "widow." 5 U.S.C. 8705(a).[1] Congress has defined widow to mean "the insured's lawful widow[]." Metropolitan Life Ins. Co. v. Manning, 568 F.2d 922, 926 (2d Cir.1977); accord Spearman v. Spearman, 482 F.2d 1203, 1204-05 (5th Cir.1973). To determine who qualifies as the "lawful widow," reference to state law is mandated since no federal domestic relations law exists. See, e.g., De Sylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956); Spearman, 482 F.2d at 1204-5; Tatum v. Tatum, 241 F.2d 401 (9th Cir.1957).
In the instant case, New York law applies because the insured was a New York resident when he died. Spearman, 482 F.2d at 1205 (domicile of insured at time of death governs choice of law for determining which of two conflicting marriages is valid); see also Manning, 568 F.2d at 926 (same); Grove v. Metropolitan Life Ins. Co., 271 F.2d 918, 919 (4th Cir.1959) (same). New York Domestic Relations Law § 6 provides:
A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either:
1. Such former marriage has been annulled or has been dissolved for a cause other than the adultery of such person; ...
N.Y.Dom.Rel.Law § 6 (McKinney's 1988 & Supp. 1995)
The more recent of two ceremonial marriages is presumed valid under New York law. The burden is on the first spouse to rebut this presumption, proving the more recent marriage invalid. See, e.g., Steele v. Richardson, 472 F.2d 49, 51 (2d Cir.1972); Seidel v. Crown Indus., 132 A.D.2d 729, 517 N.Y.S.2d 310, 311 (1987). K.C. Jackson, the second wife, relies on this presumption to oppose the motion for summary judgment. The crucial issue before me, therefore, is whether S.R. Jackson has submitted sufficient evidence to rebut the presumption under New York law.
Under New York law, the presumption in favor of a second marriage is rebutted when diligent record searches, in the counties where both parties to the first marriage resided, fail to show evidence of the dissolution of the first marriage. Seidel, 517 N.Y.S.2d at 311. In Estate of Brown, the New York Court of Appeals recognized that the presumption is powerful, requiring `strong and satisfactory' proof to the contrary. 40 N.Y.2d 938, 939, 390 N.Y.S.2d 59, 358 N.E.2d 883. While noting that this may require proof of a negative, the Brown Court found the presumption rebutted as a matter of law when a diligent record search failed to locate a divorce decree. Id.
Brown is slightly different from the instant proceeding in that there the search was limited to the one county in which the second spouse alleged a divorce had occurred. The Brown Court observed that where the second spouse offers a specific time and place of the alleged divorce, the area as to which negative proof is relevant is narrowed. Id. Here, K.C. Jackson, the second wife, does not allege a particular place in which a divorce occurred, instead making only a general allegation that her husband told her that the S.R. Jackson marriage was dissolved. This factual distinction, however, does not undermine the legal principal established in Brown that a search of the relevant places for the dissolution of a marriage is sufficient to defeat the presumption of a second wife's rights. The only significance of the factual distinction between Brown and this case is that here, a more extensive search of all locations where the marriage could have been dissolved is necessary to prove the negative that a dissolution of a marriage did not occur. Compare Seidel, 517 N.Y.S.2d at 311 *322 (a search of court records in the county where decedent resided during the period between the two marriages is minimal proof that a first marriage remained undissolved).
Second Circuit case law dealing with the presumption under New York law is consistent with New York cases that have found meaningful record searches to be sufficient proof of the validity of a marriage. Steele v. Richardson, 472 F.2d 49 (2d Cir.1972). The Steele Court held that the first spouse must produce substantial evidence showing the non-dissolution of her marriage, but if substantial evidence is produced, then the later marriage is void under New York Domestic Relations Law § 6. Id. at 51. While the Court did not define "substantial evidence," it suggested that substantial record searches could prove the continuing validity of a first marriage. Id.
Other courts have found the "substantial evidence" requirement set forth in Steele satisfied when thorough record searches failed to reveal evidence of marital dissolution. Milano v. Secretary of Health and Human Services, 586 F.Supp. 1431, 1434 (E.D.N.Y. 1984); Boyd v. Heckler, 588 F.Supp. 31, 33 (E.D.N.Y.1984). In Milano, the Court found the presumption, under New York law, was rebutted when the first wife conducted a search of divorce records based on the second wife's testimony of where the insured had resided, finding no evidence of divorce. Milano, 586 F.Supp. 1431; see Boyd, 588 F.Supp. at 33 (testimony from wife and child of first marriage that marriage was not dissolved, plus record searches in two locations where divorce was most likely to have been procured, proved validity of first marriage under New York law).
I am persuaded that a certified record search conducted by the clerk in charge of marital records in each county in which the spouses to the first marriage have resided meets the Second Circuit's "substantial evidence" requirement and proves the continuing validity of a first marriage when no record of marital dissolution is found. Because the applicable venue and jurisdictional statutes require that an action for divorce, annulment or separation be commenced only in those counties in which the parties to a marriage resided, record searches in those counties alone are undisputed evidence that a marriage was never legally dissolved. See McKinney's New York Domestic Relations Law § 230 (an action for annulment, divorce or separation must be commenced where at least one party to the first marriage resided at time of commencement of the action or where at least one party resided for at least one year prior to commencement of the action); see also CPLR § 503(a) (place of trial shall be in the county in which one of the parties resided when it was commenced).
If a clerk's record search is insufficient to rebut the presumption in favor of a second marriage, then the question remains as to what would be sufficient. K.C. Jackson is silent on this point, suggesting only that the first wife's testimony by itself is inadequate, relying on Seidel, 517 N.Y.S.2d 310, for this proposition. While Seidel did hold that a first spouse's testimony alone was insufficient to rebut the presumption in favor of a second marriage, the holding in Seidel is immaterial since S.R. Jackson has presented additional evidence, via record searches, to support her assertion that her marriage to the insured was never dissolved.
As noted, it is undisputed that the insured was a resident of Bronx County or Queens County at all times from the date of his first marriage in New York, in 1967, until his death, in 1993, and S.R. Jackson was a resident of Bronx County for this entire period. In support of her motion for summary judgment, S.R. Jackson, the first wife, submits copies of complete record searches, including a New York statewide search conducted by the New York State Department of Health, for the years 1971 through 1993, and a Queens County search for the years 1967 through 1993. S.R. Jackson also conducted a search of the Bronx County records for the years 1967 through 1993. Each of the aforementioned searches showed no record of divorce, legal separation or annulment of the marriage between S.R. Jackson and the insured. S.R. Jackson did indicate on her claim form submitted to MetLife that she had separated from the insured on November 26, 1975. That admission, however, was limited to a recognition of her de facto separation, *323 not legal separation from the insured, and S.R. Jackson has produced full record searches of all relevant counties which show no record of divorce, annulment or legal separation.
S.R. Jackson, the first wife, asserts that she neither obtained a matrimonial judgment against the insured nor was she sued by the insured in any matrimonial action, in any jurisdiction.[2] While K.C. Jackson's search revealed that S.R. Jackson did commence a divorce proceeding on May 13, 1985 in Bronx County, S.R. Jackson abandoned that action after she purchased the index number. Because no divorce judgment, annulment or legal separation resulted from that action, the action is inconsequential to the matter at hand. K.C. Jackson failed to produce any evidence regarding the legal dissolution of S.R. Jackson's marriage to the insured.
I find that a meaningful record search which reveals no evidence of divorce, annulment or separation, in all counties in which the insured and the first wife resided, is reliable and convincing evidence of the validity of that marriage. In the instant proceeding, S.R. Jackson searched the court records for each year a divorce, separation or annulment could have been obtained (January 1967 through December 1993), in each county a marital proceeding could have been commenced by either party to the first marriage, that is in each county either she or the insured resided. Each search revealed no evidence of divorce, annulment or legal separation.
When the results of the searches are considered together with S.R. Jackson's statement that she remained married to the insured, and K.C. Jackson's marriage certificate showing that the insured indicated he was "never married" (see note 2, supra), the evidence overwhelmingly, as a matter of law, supports the conclusion that the S.R. Jackson marriage was never legally dissolved and was valid at the time the insured married K.C. Jackson. Accordingly, I find that as a matter of law, S.R. Jackson has successfully rebutted the presumption under New York law favoring the latest of two marriages.
The only proof K.C. Jackson offers in support of the validity of her marriage is a hearsay statement allegedly made by the insured, stating that S.R. Jackson had divorced him. This untrustworthy statement which the insured made under circumstances in which he had every incentive to lie is of minimal evidentiary value at best. Even if I take K.C. Jackson's assertion as true and assume that the insured made such a statement, K.C. Jackson could not prevail based on this evidence alone. As noted, K.C. Jackson raises no factual dispute as to the residence of the parties to the first marriage that would require a factfinder to determine whether all relevant counties were searched. Since there is no dispute as to these factual issues, the record searches presented by S.R. Jackson are the type of convincing evidence which make summary judgment proper since the evidence supports the conclusion that her marriage to the insured was never legally dissolved as a matter of law.
Since S.R. Jackson has proved, as a matter of law, that her marriage to the insured was still valid at the time K.C. Jackson married him, it follows that K.C. Jackson's marriage to the insured is bigamous. Therefore, the K.C. Jackson marriage is invalid pursuant to New York Domestic Relations Law § 6. Under this analysis, S.R. Jackson is entitled to the proceeds of the policy since she is the insured's "lawful widow," as a matter of law.
According to the Second Circuit, however, a spouse to a bigamous and invalid marriage may qualify as the "lawful widow(er)" for purposes of entitlement of the proceeds of a FEGLIA insurance policy when a bigamous wife has status as the lawful widow under state law. Manning, 568 F.2d at 926 (2d Cir.1977) (applying Connecticut *324 law to the rights of FEGLIA claimants when there was no named beneficiary, and both claimants purported to be the "lawful widower" of the insured). The Manning Court held that despite a bigamous marriage, the second spouse had sufficient legal status as the "lawful widower" under Connecticut law for purposes of entitlement to a FEGLIA claim, reasoning that the determination should be based on which spouse had rights of intestate succession. Id.
Under New York law, S.R. Jackson, the first wife, has inheritance rights pursuant to N.Y. Estates Powers and Trusts Law § 5-1.2, which defines "surviving spouse" as the surviving husband or wife, unless it is established to the court having jurisdiction of the action that: (1) there is a valid New York matrimonial judgment dissolving or annulling the marriage; (2) the marriage is a prohibited remarriage or an incestuous or bigamous marriage under New York Domestic Relations Law; (3) the surviving spouse procured a matrimonial judgment not recognized as valid under New York law, dissolving or annulling the marriage; (4) a valid in New York judgment of separation of the marriage exists; (5) there was continued abandonment of decedent by the surviving spouse or; (6) a spouse with a support duty to the other spouse displays a continued failure to provide for the spouse in need of support.
S.R. Jackson's marriage to the insured does not fall into any of the above-referenced `disqualification' categories. As noted, S.R. Jackson has proven, as a matter of law, that her marriage to the insured was never legally dissolved or annulled, and thus, she is not disqualified as the surviving spouse under category number (1). Likewise, S.R. Jackson is not disqualified under exception number (4) because she has proved that there was never a legal separation between herself and the insured. See discussion, supra.
There is no evidence that S.R. Jackson's marriage to the insured was an incestuous or bigamous marriage or a prohibited remarriage under New York Domestic Relations Law, and therefore, exception number (2) does not apply to S.R. Jackson. There is also no proof in the record of exception (3), a matrimonial judgment not valid in New York, dissolving or annulling the S.R. Jackson marriage; or (4), that S.R. Jackson abandoned the insured (deceased); or (6), that S.R. Jackson had a duty to support the insured and failed to do so. Since S.R. Jackson does not fall into any disqualification category, she is the insured's surviving spouse pursuant to N.Y. Estates Powers and Trusts Law § 51.2, and therefore has rights of intestate succession.[3] As such, S.R. Jackson, as a matter of law, is the "lawful widow" under the analysis set forth in Manning. As the lawful widow, S.R. Jackson is entitled to the proceeds of the insurance policy in the amount of $236,879, plus interest.

III. Costs and Attorney's Fees
MetLife seeks its costs and attorney's fees, claiming it is entitled to such as a disinterested stakeholder in this interpleader action. The Second Circuit has determined that an interpleading party is entitled to recover costs and attorney's fees when it is: (1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability. Septembertide Publishing v. Stein and Day, 884 F.2d 675 (2d Cir.1989) (citing A. Moore's Federal Practice ¶ 2.16[2] (2d ed. 1989)). MetLife meets all four of these criteria because it is a disinterested stakeholder who conceded full liability, deposited the disputed funds into the Court Registry and sought a discharge from all future liability regarding Robert B. Jackson's insurance policy. MetLife is, therefore, entitled to recovery of its costs in this action.
In awarding costs in interpleader actions, courts have limited recovery to only those "costs attributable to interpleader, not for any expenses incurred as part of the ordinary conduct of business." Chemical Bank v. Richmul Assoc., 666 F.Supp. 616, *325-337 620 (S.D.N.Y.1987); see Pressman v. Steinvorth, 860 F.Supp. 171, 182 (S.D.N.Y.1994) (same).[4] The Second Circuit has expressed a similar concern that an interpleader action not be a means for an insurer to transfer its ordinary costs of doing business to its insured. See Travelers Indemnity Co. v. Israel, 354 F.2d 488, 490 (2d Cir.1965) ("We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business of their insureds by bringing an action for interpleader").
Some of MetLife's costs, like its filing fee, are self-evidently related to this action. MetLife, however, has not submitted an accounting to the court, setting forth the specific costs it seeks which are attributable to the interpleader action, and explaining why such costs, particularly its fees for house counsel, are not part of its ordinary conduct of business. In order to address this issue fully, MetLife is directed to submit to the court an accounting of its costs and a supplemental memorandum explaining how such costs, particularly attorney's fees, are not a part of their ordinary conduct of business; MetLife's submission should be filed no later than August 16, 1995; S.R. Jackson can respond by August 30, 1995; any reply memorandum is due by September 13, 1995.

CONCLUSION
For the foregoing reasons, S.R. Jackson's motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment in favor of S.R. Jackson in the amount of $236,879, plus interest, and dismissing K.C. Jackson's claim to the funds in the Court Registry. I will enter a separate order determining MetLife's motion for costs and attorney's fees. Once I have determined the amount to be awarded MetLife, that amount will be deducted from S.R. Jackson's judgment, and I will enter an order directing the Clerk of the Court to distribute the balance of the funds to S.R. Jackson.
SO ORDERED.
NOTES
[1] FEGLIA prescribes an order of precedence for the distribution of the proceeds as follows:

(1) The beneficiary designated by the insured;
(2) If there is no such beneficiary, to the widow or widower....
[2] The marriage application signed by K.C. Jackson and the insured, in which the insured indicated he was "never married", instead of indicating that he was previously married and divorced, lends credence to S.R. Jackson's claim. Such a falsification tends to indicate that the insured was never divorced because there would have been no need for him to lie if he had in fact been divorced. Dolan v. Celebrezze, 381 F.2d 231, 234 (1967); see Seidel, 132 A.D.2d 729, 517 N.Y.S.2d 310, 311-12.
[3] Because S.R. Jackson has established, as a matter of law, that K.C. Jackson's marriage to the insured was bigamous, and therefore invalid pursuant to New York Domestic Relations Laws § 6, (see discussion, supra), K.C. Jackson is disqualified as the surviving spouse under exception number (2).
[4] S.R. Jackson opposes MetLife's motion for attorney's fees on this ground, arguing that MetLife's fees are part of their normal cost of doing business. While I agree with the logic of Richmul, I cannot determine whether such logic applies to the instant case until I know definitively how MetLife calculated the fees it seeks to recover.