The ESTATE OF Mercer K. ELLINGTON, By its Executrix, Lene Ellington, Plaintiff,

v.

EMI MUSIC PUBLISHING, Defendant.

EMI Mills Music Inc. and EMI Catalogue Partnership, Defendants and Interpleader Plaintiffs,

v.

Mercedes Ellington, Gaye Ellington, Edward Ellington and Paul Ellington, Interpleaded Defendants.

No. 03 Civ. 2911(JGK)(GWG).

United States District Court, S.D. New York.

Sept. 19, 2003.

*OPINION and ORDER*

KOELTL, District Judge.

The defendants and interpleader plaintiffs, EMI Mills Music and Music Catalogue Partnership (collectively "EMI") have moved for an order pursuant to 28 U.S.C. §§ 1335 and 2361 and Federal Rule of Civil Procedure 22 awarding them the costs and attorneys' fees incurred in the interpleader action.

I.

This dispute is over royalties earned by Duke Ellington. The Estate of Mercer Ellington, by its Executrix Lene Ellington ("the Estate"), claims rights to an alleged-

ly disputed 40% of royalties from Duke Ellington compositions and has sued EMI, who administers some of the compositions at issue and is a stakeholder in a portion of the royalties. There seems to be no dispute that a State Court suit involving AS-CAP will determine the rights to the royalties, although the State Court litigation actually involves a 60% share of the royalties claimed by the children of Duke Ellington–Mercedes Ellington, Gaye Ellington, and Edward Ellington ("Ellington children"). *See Ellington v. ASCAP,* No. 602549/02 (N.Y.Sup.Ct.).

EMI maintains that as a mere stakeholder, its only interest is in paying the 40% of royalties to the proper party. It therefore interpleaded the Ellington children and Paul Ellington and deposited the royalties it possessed with this Court. (*See* Decl. of Irene Farkas ("Farkas Decl."), Ex. A (Interpleader Complaint).) EMI then sought a stipulation from the claimants discharging it from the case. Having obtained the stipulation, EMI now seeks the costs and attorneys fees incurred in this litigation, which, it claims, should have been avoided. EMI seeks approximately $37,000 in attorney fees and costs, which allegedly were incurred because pursuing the interpleader action and obtaining the stipulation of discharge was particularly difficult and time consuming.

## II.

The application is opposed on various grounds. First, the Estate claims that the 40% was never contested and that EMI, therefore, had no reason withhold the royalties. It is clear, however, that the Ellington children protested any payments until the dispute initially brought in state court was resolved. (*See* Farkas Decl., Ex. F.) It is also clear that the Estate brought this lawsuit, choosing not to wait for a resolution in the state court litigation. Moreover, EMI offered to place the entire amount of the disputed royalties into an interest-bearing account to abide resolution or judicial interpretation, but the parties would not agree. (*See* Farkas Decl., Ex. F.)

Second, the Estate and the Ellington children argue that EMI waited too long and kept the money, therefore, losing potential interest. EMI did not wait too long. The amounts were in fact being disputed as a result of the state court lawsuit. In any event, EMI has been discharged from this action and the only issue is its claim to costs and attorneys' fees. EMI certainly did not wait so long or act in such bad faith that equitably it should be denied attorneys' fees and costs.

Third, the Estate argues that all of the costs and attorneys' fees should be assessed against the Ellington children and their attorney, but there is enough fault to go around for all of the claimants. The Estate brought the present litigation when it easily could have awaited the result of the state court litigation or agreed to place the funds into the registry of the Court. The Estate, by initiating the litigation, forced EMI to take action.

 In short, this is a case where EMI has met the requirements for the equitable award of costs and attorneys' fees, as set out in this Court's opinion in *GOAT, Inc. v. Four Finger Art Factory, Inc.,* No. 01 Civ. 10079, 2002 WL 31684400 (S.D.N.Y. Nov.25, 2002). At the Court's discretion, a party bringing the interpleader action may receive reasonable attorneys' fees and costs when that party is "(1) a disinterested stakeholder, (2) who has conceded liability with respect to the deposited fund, (3) has deposited the disputed funds into the Court, and (4) has sought to be discharged from liability." *Id.* at *1; *see also Septembertide Pub., B.V. v. Stein & Day, Inc.,* 884 F.2d 675, 683 (2d Cir. 1989); *Metro. Life Ins. Co. v. Jackson,* 896 F.Supp. 318, 324 (S.D.N.Y.1995); *Pressman v. Estate of Steinvorth,* 860 F.Supp.

171, 182 (S.D.N.Y.1994); 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil § 1719 (3d ed.2001). EMI is a disinterested stakeholder who maintains that its only interest is in distributing the royalties to the proper party. EMI has deposited the funds with the registry of this Court, and it has sought, and obtained, a discharge from this dispute.

### III.

While EMI is entitled to attorneys' fees and costs incurred in bringing this interpleader action, those expenses must be reasonable and it is at the discretion of the Court to determine what award is appropriate. 7 Wright, Miller & Kane, supra, § 1719. The typical interpleader claim does not involve extensive or complicated litigation, and thus fees should be "relatively modest." *Id.; see also Johnson v. Electrolux Corp.*, 763 F.Supp. 1181, 1189 (D.Conn.1991) (characterizing $1000 award as appropriate "modest" compensation); *Chem. Bank v. Richmul Assocs.*, 666 F.Supp. 616, 619 (S.D.N.Y.1987) (stating that fees for bringing interpleader action are "usually nominal"); *John Hancock Mut. Life Ins. Co. v. Doran*, 138 F.Supp. 47, 50 n. 2 (S.D.N.Y.1956) (commenting that interpleader fees "should be kept small, both out of fairness to the eventual recipient of the fund and in recognition of the minimal work necessary to institute a suit in interpleader").

█ In this case, EMI seeks $37,000 in costs and attorneys' fees based on discounted hourly rates. Although it had requested almost $60,000, EMI has abandoned its claim to fees and costs associated with making this motion. EMI has also subtracted from its request $3960 for expenses incurred prior to working on the interpleader complaint. Despite these subtractions, EMI's request for fees and

costs remains plainly excessive for this kind of action.

In *GOAT*, the moving party claimed over $27,000 in attorneys' fees and costs for work primarily consisting of drafting the interpleader complaint and appearing before the magistrate judge, which led to a stipulation discharging the stakeholder. *GOAT*, 2002 WL 31684400, at *2. This Court found that the requested amount was "excessive and unreasonable" because the case did not involve extensive litigation, nor did it require the stakeholder to participate in discovery. *Id.* The decision specifically identified as excessive the thirty hours spent researching and drafting what should have been a "relatively straightforward interpleader action," and it noted that the requested fees and costs would have exceeded 20% of the fund at issue. *Id.* Therefore, instead of awarding the $27,000 sought, this Court awarded $7000–$6000 in attorneys' fees and $1000 costs. *Id.* In reaching that figure, this Court relied on and cited similar cases, where the reasonable fees and costs generally fell below $8000. *See Hoffman v. Toms*, No. 98 Civ. 6241, 2000 WL 246408, at *2 (S.D.N.Y. Mar.3, 2000) (awarding $4000 in attorneys' fees and calling amount sought "excessive given the simplicity of the task"); *Johnson*, 763 F.Supp. at 1189 (awarding $1000 in fees and costs, rather than the $7422.07 requested, because interpleader required no discovery or complex legal research); *Chem. Bank*, 666 F.Supp. at 619 (ordering $7357.16 in fees and costs instead of $26,570.44 because there "was no real complexity of [the] interpleader action, no significant discovery, and no extensive motion practice").

In this case, as in *GOAT*, the fees for drafting a straightforward complaint, including all of the research, were plainly excessive.[1] While the litigation has been

---

1. The plaintiffs and interpleaded defendants

calculate that EMI's attorneys spent around

acrimonious, it has not been complex, either legally or factually. There has not been extensive litigation over the discharge, and EMI was not required to participate in discovery. Although there may be merit to EMI's claims that obtaining the discharge was difficult, the stipulation was reached only one month after EMI filed the interpleader action. *Cf. Travelers Ins. Co. v. Estate of Garcia*, No. 00 Civ. 2130, 2003 WL 1193535, (E.D.N.Y. Feb.4, 2003) (awarding $25,000 where stipulation was reached almost twenty months after interpleader was filed, difficult discovery issues were involved, and stakeholder incurred extraordinary fees resulting from motion for summary judgment). The fees sought by EMI are almost 15% of the fund, and they far exceed awards that are generally considered substantial. *See* 7 Wright, Miller & Kane, supra, § 1719 n. 21 (citing cases and characterizing awards of $25,000, $10,000, and $8000 as "substantial"); *cf. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, No. 98 Civ. 1756, 2001 WL 536929 (S.D.N.Y.2001) (awarding over $250,000 where litigation was particularly complex and award was roughly 1% of $25 million fund at stake).

The interpleader action in this case has primarily involved two conferences with this Court and two settlement conferences with the Magistrate Judge, drafting the complaint, reviewing and responding to correspondence, and negotiating and commenting on the final discharge. Discounting the unreasonable amount of time spent, including plainly excessive work, but taking into account that there were several court conferences and that EMI has attempted to avoid this acrimonious litigation, the reasonable fee should be $9000 plus $1000 in expenses.

The parties dispute who should bear the attorneys' fees and costs. It is plain that all of the parties with a potential interest in the fund bear some responsibility for requiring EMI to resort to the interpleader action as a means of resolving the claims to the fund. Therefore, the attorneys' fees and costs should be subtracted from the fund before it is disbursed.

## CONCLUSION

EMI is entitled to an award of $9000 in attorneys' fees and $1000 in expenses, which are to be deducted from the fund before it is disbursed.

**SO ORDERED.**

---

forty to fifty hours researching, drafting, and revising the pleadings. In reply, EMI does not really challenge the numbers, although it suggests that those calculations include time spent on other activity. In *GOAT*, this Court explicitly identified the thirty hours spent researching and drafting the complaint as excessive. *See GOAT*, 2002 WL 31684400, at *2. The amount of time spent researching and drafting the Interpleader Complaint, including the $2000 in Westlaw costs, was excessive.